COULTER et al. v. B. F. THOMPSON LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit. January 24, 1906.)

No. 1,431.

1. TRIAL—INSTRUCTIONS—PROVINCE OF COURT.
Whether or not one class of testimony on an issue of fact is entitled to greater weight than another is a question of fact, and it is not the province of the court to instruct the jury as to which class should be preferred.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 439.]

2. SAME—REFUSAL OF REQUESTS.
It is not error to refuse an instruction, although correct, where the law applicable has been correctly given to the jury by the court in its charge in different language.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 651–659.]

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

The plaintiff below brought this action to recover damages resulting from an alleged breach of a contract for the purchase of oak lumber to be delivered by the defendants at Clarksville, Tenn., witnessed by a letter from the defendant, the terms of which were duly accepted by the plaintiff, as follows:

"Clarksville, Tenn., January 28, 1902.

"Dear Sirs: We enter your order for the following order: Three hundred to five hundred thousand feet (estimated) of quartered white oak. Should there be more on the tract of timber, you are to have it at the same price, and will cut your order 4-4, 5-4 and 6-4, all to be put on sticks during the year 1902. Ones and twos six-inch and up wide and ten-inch up long. Price of ones and twos forty dollars ($40.00) per· thousand feet. Commons to be four-inch and up wide, eight-inch and up long, price of commons twenty dollars ($20.00) per thousand feet. Stock to be four to five months on sticks. Terms cash, less two per cent as fast as lumber is shipped out, and bill rendered to main office in Grand Rapids, Mich. Above prices are f. o. b. cars this place, lumber to be inspected here by your man.

"Your acceptance of the above will constitute a contract between us.

"Coulter & Merritt."

Of the quantity of lumber mentioned only two loads, amounting to 21,-714 feet, were delivered. The plaintiff alleged that the market value of the undelivered portion of what should have been delivered under the terms of the contract was much higher at Clarksville at the time when it was to be delivered than the contract price, and this difference was what the plaintiff claimed to recover. A verdict was found and a judgment rendered in favor of the plaintiff for $4,174.50. A motion for a new trial was made and refused.

H. N. Leech, for plaintiffs in error.
F. P. Bond, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges

SEVERENS, Circuit Judge, having made the preceding statement delivered the opinion of the court.

No exceptions were taken upon the trial, either to rulings of the court in admitting or rejecting evidence, or to the instructions given to the jury. After the court's instructions had been given, counsel for defendants moved the court to give the following additional instructions:

"(1) How much of the timber on the tract was quarter-saw stock is best shown by evidence of how much was actually sawed out by a competent sawyer. Such evidence, if made before you, should be accepted in preference to estimates made by any of the witnesses as it stood on the ground.

"(2) If, in February, 1903, plaintiff insisted that the contract was breached, and refused then on that account to accept any lumber then on hand, there could not be any recovery for failure to deliver the amount so on hand."

These propositions were declined, to which action of the court the defendants excepted. The defendants excepted to the refusal of the court to grant a new trial and have assigned error upon it. In regard to this, we have only to reiterate the rule of the federal appellate courts that the action of the court upon motions for new trials, being matter of discretion, is not the subject of review. The circumstances are not so extraordinary as to justify a disregard of the rule. There is nothing, therefore, for us to consider except the refusal of the court to give to the jury the above-mentioned instructions as requested by the defendants. The contract states that the quantity of lumber sold is an "estimated" quantity. This has reference to a fact, proven by the evidence, that the subject of the contract was the product of the oak timber on a certain tract of land called the "Rudolph Tract." To show how much there was of this, and therefore how much should have been delivered to the plaintiff, the latter called expert estimators who had gone over the tract for the purpose of estimating the oak timber suitable for quarter sawing, and who testified that according to their estimates there was as much as the estimate made in the contract. On the other hand, the defendants produced as a witness the sawyer who sawed out the oak timber on the tract, and who testified that not more than 75,000 feet of quartered-sawed lumber could be got out of it. The court could not have granted the first of the requested instructions without usurping the province of the jury. It was not a question of law whether the testimony of one of the parties should be preferred to that of the other, but a question of fact to be submitted to the judgment of the jury. It was perfectly competent for them to determine from the testimony which was the most satisfactory and most safely to be relied upon. This was the view of the court, and its instructions upon this subject were full and correct. After referring to the wide discrepancy of the witnesses upon this subject, the court said:

"Now, whether the one set of witnesses or the other is mistaken about this, the jury must say. And, in determining that, you look to their intelligence, their manner on the stand before you, their opportunity growing out of their experience as lumbermen, and the extent to which they had put calculations of timber to the test. Then look to what they did in this instance as a method of ascertaining the probable quantity of timber, whether it was by their estimation, or by running it off in slips and counting the trees or by

counting the trees as a whole. Confessedly, of course, it could be just an approximation or a probable estimate in the very nature of the subject; but there is a very wide difference here. * * * You look to the circumstances and situation of each witness, any motive he might have, if any, and to his methods, as I have said, of measuring or estimation. His intelligence and his experience, all of those things cut quite a figure in enabling the jury to say how much credit shall be given to this witness or that witness; whether his statement in itself is probable or improbable. So that the question before you is, what quantity of lumber the defendants, acting in good faith, undertaking to cut all that could be cut into quarter-sawed oak and exercising reasonable skill and care in sawing it, what quantity ought this plaintiff to have delivered to him there on the cars at Clarksville ready for shipment?"

In the opinion of the court in Ætna Life Insurance Co. v. Ward, 140 U. S. 76, 91, 11 Sup. Ct. 720, 35 L. Ed. 371, it was said:

"It may be that, if we were to usurp the functions of the jury and determine the weight to be given to the evidence, we might arrive at a different conclusion. But that is not our province on a writ of error. In such a case we are confined to the consideration of exceptions, taken at the trial, to the admission or rejection of evidence and to the charge of the court and its refusals to charge. We have no concern with questions of fact, or the weight to be given to the evidence which was properly admitted. Minor v. Tillotson, 2 How. 392, 393, 11 L. Ed. 312; Zeller's Lessee v. Eckert, 4 How. 289, 11 L. Ed. 979; Dirst v. Morris, 14 Wall. 484, 490, 20 L. Ed. 722; Prentice v. Zane's Adm'r, 8 How. 470, 485, 12 L. Ed. 1160; Wilson v. Everett, 139 U. S. 616, 11 Sup. Ct. 664, 35 L. Ed. 286."

Of course, if there is no evidence fairly tending to establish a material fact in favor of one of the parties, it would be within the province and duty of the court to so declare and to direct the jury accordingly. Mt. Adams, etc., R. Co. v. Lowery, 74 Fed. 463, 20 C. C. A. 596; Travelers' Ins. Co. v. Randolph, 78 Fed. 754, 24 C. C. A. 305; Minahan v. Grand Trunk Western Ry. Co. (C. C. A.) 138 Fed. 37. But that was not the case here. The evidence of the estimators was undoubtedly competent evidence and had some tendency to show that there was sufficient timber on the tract to fill the whole, or in a much larger measure than the defendants claimed, the requirements of the contract in respect of the quantity to be delivered.

The case of Vermont Street, etc., Church v. Brose, 104 Ill. 206, cited by counsel in support of their contention is not relevant. That was a proceeding in equity for the enforcement of a mechanics' lien. The lower court had found the fact upon an issue regarding the thickness of a wall of the building. There was evidence of an exterior measurement and also testimony of the masons who built it. The court below thought the latter most reliable, and the Supreme Court thought so too and confirmed the finding. But it is obvious that the language of the court there relied on was used arguendo in reference to a question of fact, and was not a ruling upon matter of law.

Then, as to the second proposition: If there were no circumstances or conditions which would qualify the effect of the tender of the lumber therein mentioned and a tender was in fact made, the proposition would seem to be sound. The defendants would have the right to minimize the plaintiff's damages to that extent. The principle involved was recognized by this court in Bovee's Adm'rs v. Porter, 22 U. S. App. 483, 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167, sub. nom. Lawrence v. Porter, where, directly after the breach of a contract for the sale of

lumber, the defendant offered to supply it at the contract price. It was held that the seller might do this and thereby defeat the buyer's claim for damages, subject to the condition implied in the following language of the opinion:

"The offer after the breach by the defendants to sell the lumber necessary to complete the contract was not coupled with any condition operating as an abandonment of the contract, nor as a waiver of any right of action for damages for the breach."

A proper instruction to the jury upon this point should state the rule with its proper limitations, where the evidence is such that the jury might think that the tender was not absolute and unqualified. But, on turning to the bill of exception, we find that the court had already, in substance, given this request of the defendants with the proper limitations which the jury might find from the evidence to exist. Referring to this contention of the defendants, the court said to the jury:

"Now, if the defendants tendered any quantity of lumber sawed in accordance with this contract, and the plaintiff refused, without good reason, to receive it, that would be a satisfaction, just the same as if it had been received, to the extent that there was an offer or tender of the lumber. Now we may call that, for short, a valid offer, because to make it a valid offer it must have been sawed in accordance with the contract. If there was an established and well-known usage or custom in the trade to offer to ship this lumber only in car load lots of one kind, if that was a fixed and established usage, that usage would incorporate itself into this contract, and it would have been the duty of defendants to have furnished it in car load lots in accordance with the established trade usage. Now, whether that was the case or not, you must say upon the evidence. I believe it is not contradicted that that was the usage, but you must find out and infer how that was."

As was said by Mr. Justice Lamar in delivering the opinion of the Supreme Court in New York, Lake Erie, etc., R. R. Co. v. Winter's Adm'r, 143 U. S. 60, 75, 12 Sup. Ct. 356, 36 L. Ed. 71:

"It is much the better practice to refuse to give instructions to the jury, the substance of which has already been stated in the general charge, than to repeat the same charge in different language, although the charge requested may be technically correct as an abstract proposition of law; for a multitude of instructions, all stated in different language and meaning the same thing, tends rather to confuse than to enlighten the minds of the jury."

No error in the proceedings to which the exceptions relate being found, the judgment must be affirmed with costs.