### HIRSCH v. GEORGIA IRON & COAL CO.

(Circuit Court of Appeals, Sixth Circuit. April 20, 1909.)

No. 1,896.

1. EVIDENCE (§ 397*)—CUSTOMS AND USAGES (§ 17*)—PAROL EVIDENCE TO VARY CONTRACTS.

Parol evidence is inadmissible to change, contradict, qualify, or explain a written contract which is unambiguous; nor is it permissible to show a custom or usage when the words of the contract would be thereby contradicted or modified.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756–1764; Dec. Dig. § 397;* Customs and Usages, Cent. Dig. § 34; Dec. Dig. § 17.*]

2. SALES (§ 177*)—CONSTRUCTION OF CONTRACT—TIME AND MANNER OF DELIVERY.

Under a contract for the sale and purchase of 3,000 tons of pig iron to be delivered about equally during three specified months f. o. b. cars at the seller's furnace, the buyer was obligated to accept delivery during the time specified on board cars at the furnace, and his refusal to give shipping directions so that delivery could be so made was a breach of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 445; Dec. Dig. § 177.*]

3. SALES (§ 175*)—DELIVERY AND ACCEPTANCE—REFUSAL TO RECEIVE.

Where the purchaser of a quantity of iron refused to accept delivery as required by the contract, the seller was under no duty to comply with the demand of the purchaser that it be otherwise delivered at an increased expense to the seller, but had the right to stand upon its contract and recover damages for its breach.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 435; Dec. Dig. § 175.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action by vendor for breach of contract for the purchase of 3,000 tons of pig iron. The contract was upon a printed form. The vendor was the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Georgia Iron & Coal Company, whose furnace was at Rising Fawn, Ga. The vendee was Isaac C. Hirsch, doing business in Cincinnati, under the name of "The General Manufacturing & Supply Company of America." The contract was in these words:

"Sale Memorandum,

Issued from the Office of Rogers, Brown & Company,

Furnace Agents.

"Cincinnati, November 25, 1904.

"No. 79,342.

"Sold to General Manufacturing & Supply Company of America, Cincinnati, Ohio.

"3,000 tons Rising Fawn, No. 2, Foundry Pig Iron.

"Price (freight cash), $13.85, cash 30 days, per ton 2,240 lbs. f. o. b. cars furnace.

"If this lot is divided in delivery, settlement to be made for each lot promptly when delivered.

"Deliverable about equally during April, May and June.

"Ordered shipped (this includes all shipping directions rec'd with your order."

[With the line across·as set out above.]

"Subject to possible delay from strikes, accidents or other cause, or delays in transit, unavoidable delaying manufacture or delivery.

"Via. 11-26, 1904.  Cinti., O.

"Georgia Iron & Coal Company,

"Per Rogers, Brown & Company, Agents.

"The General Manufacturing & Supply Company of America,

"Per I. C. Hirsch.

"(Dup. spn. formerly accepted by Hirsch, sent for 12-23-04).

There was jury and judgment for the plaintiff below.

Gilbert Bettman and Adam Kramer, for plaintiff in error.

H. L. Gordon, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and TAYLER, District Judge.

LURTON, Circuit Judge (after stating the facts as above). The errors assigned turn mainly upon the. interpretation of the contract in respect to delivery. The plaintiff in error, when asked to furnish shipping directions, refused to furnish any, and directed that the iron be delivered to a storage or warrant company at Rising Fawn and certificates or warrants delivered to him. There was much correspondence and some oral interviews between the parties in respect to this demand for delivery by warrant, and the buyer's unwillingness to give such shipping directions as would enable the seller to secure cars upon which he could deliver as he was bound to do. Most of this correspondence and evidence was excluded, and this exclusion has been made the subject of many assignments of error. The evidence which was excluded comes to this: That the buyer did not want this iron sent to his plant at Cincinnati during the period of delivery named, as he was not prepared to use or store it. That he wished it deposited with a pig-iron storage company doing business at Rising Fawn, and certificates or warrants issued and delivery made to him by such negotiable warrants. This evidence tended to show that, though at first the sellers were unwilling to change the delivery at all, they did yield, and offered to deposit the metal with a warrant storage company and

make delivery as requested, provided the buyer would pay the cost and expenses incident thereto over and above cost of delivering aboard cars at the furnace. There was much correspondence and negotiating, which ended by the refusal of the plaintiff in error to agree to pay such added expense, and an absolute refusal to give any shipping directions as demanded. This attitude of the plaintiff in error is well illustrated by the sixth assignment of error. The defendant in error had shown by one of its attorneys, Mr. Hermann, that about the middle of June he had demanded shipping instructions and notified plaintiff in error that in default his client would sell the iron on account of Mr. Hirsch and hold him for any loss, and that Mr. Hirsch answered:

"I consider the contract canceled and will have nothing more to do with it. You can do what you want with it."

Mr. Hirsch was then recalled as a witness, and this occurred:

"Q. I will ask you to state whether or not anything was said by you in that conversation in which Mr. Hermann referred, that you were willing to take this iron if they would deliver the warrant or certificate to you, and pay for it according to the amount provided in that contract, but that you would not have it shipped up here? What, if anything, was said to that effect to Mr. Hermann on that occasion? (Question objected to. The court sustained the objection, to which ruling counsel for the defendant at the time excepted, and stated that they expected to show by this witness, if permitted, that on June 13, 1905, during this conversation with Mr. Hermann on behalf of the plaintiff, who had called for the purpose of notifying Mr. Hirsch in the office of his attorney, that he demanded of him to take the iron; that Mr. Hirsch replied to him that he was willing to take a warrant or certificate in place of the iron and pay the contract price, $13.85 per ton, which was declined.)"

The correspondence excluded, as well as this oral evidence offered, if admitted, would only have shown that the parties entertained different views about their rights under the contract in respect to delivery; that the seller was willing to accommodate the buyer by a delivery by warrant, provided he would pay the additional expense; that the buyer stood by his supposed legal rights, and would not pay anything for delivery by warrant above the stipulated price of $13.85 per ton free on board cars at the furnace.

The court excluded all such evidence, and instructed the jury that the contract of sale was plain and unambiguous, and needed no explanation, and admitted of no contradictions by parol. That under it the seller was obliged to deliver "f. o. b. at the furnace," which meant he should deliver free of handling and loading expense on board cars at the furnace. He also said that as cars were to be obtained only for the carriage of iron to some point of destination, it was the duty of the buyer to seasonably furnish shipping directions so that the seller could apply for cars upon which he could make delivery. There was no error in this construction. The buyer was obligated to accept delivery on board cars at the furnace. The destination of the iron so loaded was to be determined by himself only. He could not, under the plain terms of the agreement, say, "I will not give shipping directions," for that would be to say, "I will not accept delivery on board cars at the furnace," and was a breach of his agreement. It follows, therefore, that his willingness to accept delivery of deposit certificates or warrants to

be issued by a pig-iron warehouse company was no defense to an action for a breach by his refusal to furnish shipping directions.

The contract of sale was plain enough. Evidence is inadmissible to change, contradict, qualify, or explain a written contract which is unambiguous. Nor is it permissible to show a custom or usage when the words of the contract would be thereby contradicted or modified. Lillard v. Kentucky Distilleries & Warehouse Co., 134 Fed. 169, 67 C. C. A. 74; Sheffield Furnace Co. v. Hull Coke Co., 101 Ala. 447, 14 South. 672; Silberman v. Clark, 96 N. Y. 522.

Neither was the excluded evidence competent as showing a subsequent agreement to make delivery otherwise than as provided in the written agreement. No such new agreement was pleaded.

But it is now said that the excluded evidence was competent and relevant upon the measure of damages. They claim that, if the defendant in error had a right to stand upon the contract and make delivery only on board cars at the furnace, it was, nevertheless, the duty of the vendor company to deliver into a warrant yard, as requested, and rely upon its remedy over against the vendor for additional costs thus incurred. This is a novel application of the well-known rule that one who has been damaged by the breach of a contract must do nothing to aggravate his injury and all that he reasonably can to mitigate the loss. Lawrence v. Porter, 63 Fed. 62, 65, 11 C. C. A. 27, 26 L. R. A. 167; Lillard v. Kentucky Distilleries & Warehouse Co., 134 Fed. 170, 178, 67 C. C. A. 74. The duty imposed by the equitable rule referred to must be held within reasonable bounds. It is a rule which has never been regarded as requiring one to yield to a wrongful demand that he may thereby save the wrongdoer from the legal consequences of his own error. The reservation of the right to hold one's adversary to the payment of any added cost or expense thereby incurred does not help the case. When our civilization rises to the standard of the Sermon on the Mount the courts may be willing to require one to yield to another rather than stand upon the letter of his rights. There is no view of the excluded evidence which would make it competent.

The plaintiff in error has no reason to complain of the charge of the court in respect to the measure of damages. The defendant in error was under no obligation to treat the contract as finally repudiated until after the demand made in June and the absolute refusal of the plaintiff in error to go on with the matter. Indeed, we are impressed that every reasonable matter in mitigation of damages was given full force by the trial judge and the damages cut down to the lowest possible limit.

The assignments are all overruled, and the judgment affirmed.