CAMPFIELD v. SAUER et al.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1911.)

No. 2,095.

1. DAMAGES (§ 120*)—BREACH—MEASURE OF DAMAGES.

Where plaintiffs had contracted to furnish defendant the lumber required under a building contract, but, lumber having advanced in price, refused to make further deliveries unless defendant would pay the advance, the fact that defendant refused to do so did not preclude him from recovering, as damages for breach of the contract, the loss from delay in obtaining the lumber elsewhere, since he was under no obligation to accept it from plaintiffs under the conditions attached to their offer which would have required him to waive the breach of the contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. § 120.*]

2. DAMAGES (§ 163*)—ACTION FOR BREACH—MATTER IN MITIGATION OF DAMAGES—BURDEN OF PROOF.

The party chargeable with breach of a contract has the burden of proving facts in mitigation of damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 454–459; Dec. Dig. § 163.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. DAMAGES (§ 175*)—EVIDENCE—BREACH OF CONTRACT.**

Upon the question of the damages recoverable for delay by plaintiffs in furnishing the lumber required by defendant in the performance of a building contract, evidence was admissible that plaintiffs knew that, under defendant's contract, he was subject to a penalty if the building was not completed within the time fixed, as tending to show that such penalties were within the contemplation of the parties when the contract for the lumber was made.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 469–471; Dec. Dig. § 175.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action at law by Charles A. Sauer, Adam J. Sauer, and John J. Sauer, copartners as C. A. Sauer & Co., against Edwin M. Campfield. Judgment for plaintiffs, and defendant brings error. Reversed.

Henry B. Graves, for plaintiff in error.

Robert E. Bunker, for defendants in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and Mc-CALL, District Judge.

KNAPPEN, Circuit Judge. The plaintiff in error (hereinafter called the defendant) had a contract with the board of education of Ann Arbor, Mich., for the construction of a high school and library building, to be completed by August 15, 1906. The defendants in error (hereinafter called the plaintiffs) were unsuccessful bidders for this contract, and after its award to defendant entered into contract with him, through an offer in writing (accepted by the defendant) in the following language:

"Ann Arbor, Mich., July 8, 1905.

"Mr. E. M. Campfield, General Contractor, High School and Library, Ann Arbor, Michigan—Dear Sir: We will furnish you all the timber as below, sizes and prices hereafter named and specified free on board cars Ann Arbor, Mich., Ann Arbor Ry. delivery, for the High School and Library Building. Quality to be as per specifications for said building, all as per sizes and specifications, which you are to furnish us. And will do all in our power to get a quick delivery, especially the first floor tier of floor joist. (The following prices are net.)"

A schedule of prices and sizes followed. Plaintiff sued for the unpaid price of lumber furnished under this contract. The defendant set up a counterclaim for breach of contract, in failing to deliver lumber as demanded. On the first trial plaintiffs recovered, defendant's counterclaim being rejected, under a construction adopted by the Circuit Court, that the contract was unilateral. This court reversed the judgment of the Circuit Court and awarded a new trial, construing the contract as binding the plaintiffs to furnish and the defendant to buy thereunder all of the timber required for the building. Campfield v. Sauer, 164 Fed. 833, 91 C. C. A. 304. Upon a new trial plaintiffs have again recovered. The important facts, so far as they need now be set out, are these:

During July, 1905, defendant sent plaintiffs four orders under the contract, amounting to $8,768.43. Defendant paid thereon $7,211.33

(possibly 10 cents more), leaving an unpaid balance, as claimed by plaintiffs, of $1,557.10. The lumber under these orders was delivered at dates ranging from August 22d to December 29, 1905. No further order was made until October 21, 1905. By this time the price of lumber·had appreciably advanced. Plaintiffs expressed a willingness to fill this order provided defendant would stand the difference caused by the increased prices, refusing otherwise to fill it or further orders, under the claim (no competent evidence of which is called to our attention) that plaintiffs were induced to enter into the contract by defendant's agreement to immediately furnish the schedule of sizes, and that defendant when requested to furnish such schedules, agreed to take his own chances on an increase in price. Defendant declined to stand the increase, and on October 30th notified plaintiffs that unless advised that the latter would furnish all the lumber contracted for, defendant would purchase in open market at the best prices obtainable, and would charge the extra cost·thereof to plaintiffs' account "with any damage or cost in securing the aforesaid lumber." The orders subsequent to those of July were unfilled. Upon the trial defendant admitted the receipt of lumber amounting to $8,422.46, and claimed payments thereon of $7,211.43, leaving an admittedly unpaid balance of $1,211.03. He claimed to have paid by way of increased price of lumber purchased on account of plaintiffs' default, and on account of defects and shortages in the lumber received under the July orders, $973.31. Recovery was asked for this amount, as well as special damages for the alleged delay of 60 days in the completion of the building through plaintiffs' delay in filling the July orders and the failure and refusal to fill the later orders. These special damages claimed consisted, first, of an item of $2,500 which defendant claimed to have paid to the board of education under a provision of his contract with the board, by which defendant agreed to pay the actual damages sustained by delay in the completion and delivery of the building; and, second, large amounts claimed to have been lost by way of wages and other expenses while the work of construction was suspended by reason of plaintiffs' delay in furnishing lumber. The jury were instructed (as we construe the charge) that defendant was entitled to credit against the purchase price of the lumber delivered to the extent of shortages in the invoices thereof, as well as on account of defective lumber not actually used by defendant (in case of such use the defendant to be liable for its reasonable value only); and that the defendant was entitled to recover on account of the lumber not delivered only the difference between the contract price and the increased market price, unless unable to purchase at the market price. A later instruction that the value of lumber not furnished could be assessed at no more than the market price at the time plaintiffs refused to proceed with the contract was doubtless inadvertent. Defendant's claims for damages resulting from delay in filling the July orders and from refusal to fill the later orders were not submitted. Verdict was rendered for plaintiffs for the full amount of their claim with interest, and for defendant, by way of set-off, for $744.05, leaving a net recovery in plaintiffs' favor of $1,117.97.

[1] 1. The important question presented is whether the trial court rightly excluded from the consideration of the jury the special damages claimed by defendant to have been suffered through plaintiffs' refusal, in October, 1905, to make further deliveries. Plaintiffs contend that the court's action was justified under the doctrine announced by this court in Lawrence v. Porter, 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167, and the record seems to indicate that the court's action was based upon the authority of that case. It is clear to our minds that the case presented here is not brought within the doctrine of Lawrence v. Porter.

In that case there was a contract for the sale of lumber on credit. The seller refused to deliver on credit, offering, however, to deliver for cash at a reduced price, the reduction more than equalling the interest for the term of credit. The buyer did not allege inability to pay cash, but asserted that he was unable to obtain the lumber from others than the seller at the place of delivery or other available market. It was held that the buyer could not recover damages on the ground that he had bought for resale at another place at an advance over the contract price and cost of transportation, for the reason that plaintiff had received from defendant an unconditional offer to furnish the lumber at a reduced price. No question was made of the ability and readiness of the defendant to so furnish. In that case Judge (now Mr. Justice) Lurton, speaking for this court, said:

"The offer after the breach by defendants to sell the lumber necessary to complete the contract was not coupled with any condition operating as an abandonment of the contract, nor as a waiver of any right of action for damages for the breach."

In the case before us plaintiffs' offer to furnish the lumber was not unconditional. On the contrary, the statement was:

"We are perfectly willing to furnish the lumber, provided only you will stand the difference caused by the increase in price since our original agreement and as per your verbal agreement above mentioned."

It is clear that had defendant accepted this offer he would have abandoned all claim for damages for the difference in price so paid. He was under no obligation to make such waiver for the sake of saving plaintiffs from liability for the damages which might result from delay through purchasing elsewhere. Coulter v. B. F. Thompson Lumber Co. (Sixth Circuit) 142 Fed. 706, 74 C. C. A. 38; Hirsch v. Georgia Iron & Coal Co. (Sixth Circuit) 169 Fed. 578, 95 C. C. A. 76. In the latter case Judge Lurton, speaking of the rule recognized in Lawrence v. Porter, that one who has been damaged by the breach of a contract must do nothing to aggravate his injuries, and all that he reasonably can to mitigate the loss, said:

"The duty imposed by the equitable rule referred to must be held within reasonable bounds. It is a rule which has never been regarded as requiring one to yield to a wrongful demand that he may thereby save the wrongdoer from the legal consequences of his own error."

Nor does it indisputably appear that, after plaintiffs' refusal in October to furnish the lumber, defendant could have obtained lumber of the required dimensions in time to have prevented the alleged delay in

the construction of the building. It is true that Spalding, a wholesale lumber dealer at Detroit, testified that all the lumber in question could have been furnished through him. Plaintiffs in fact furnished through Spalding all the lumber delivered under the contract. Defendant denies that he knew that all the lumber delivered was so procured. Spalding, however, testifies that he did not have in stock lumber of all the dimensions called for, and that had he been called upon, he would have been compelled to have some of it manufactured in the south. Plaintiffs' explanation of the delay in filling the July orders is that it required several months to get out the specially manufactured stock. Defendant testified that he obtained the timber in question from different people, in different parts of the country, at the lowest prices obtainable. He says he had to go out into the open market to buy, and that "we solicited every firm that we knew of that was handling timber of that kind; we sent out over 200 inquiries and sent our specifications in every direction;" and further, that he purchased the special sizes at the best figure he could obtain at the time, so as to get it immediately.

[2] The burden of proving that the damages alleged have been sustained by the defendant could have been prevented or mitigated by his action rested upon the plaintiffs, as the parties charged with responsibility for breach of the contract. Lillard v. Ky. Dist. & Warehouse Co. (Sixth Circuit) 134 Fed. 168, 178, 67 C. C. A. 74; Ky. Dist. & Warehouse Co. v. Lillard (Sixth Circuit) 160 Fed. 34, 40, 41, 87 C. C. A. 190; Howard Supply Co. v. Wells (Sixth Circuit) 176 Fed. 512, 516, 100 C. C. A. 70. Whether plaintiffs had discharged this burden was, under the evidence, a question of fact for the jury.

Plaintiffs earnestly contend that the delay in the completion of the building was occasioned solely by defendant's fault in not sooner furnishing lists of the kinds and sizes of timber needed, and there was testimony tending to support this contention. As said by this court upon the former review, it "devolved upon Campfield to furnish Sauer & Co. from time to time lists of the quality and sizes needed." The trial court instructed the jury that it was the duty of the defendant "from time to time as the building progressed to order from the plaintiffs the timber of the agreed sizes necessary to be used in the construction of the buildings; and it is for the jury to determine whether the defendant Campfield in any manner or form broke the contract in this respect." On July 26, 1905, plaintiffs, in acknowledging the receipt of the order, wrote, "Kindly send the balance of stock required at once," evidently referring to lists of quality and sizes needed. Defendant, however, sent no orders between July 26th and October 18th. Defendant testified that the work was suspended about 60 days "between January and spring time," and that the occasion of the delay was lack of floor joists and roofing timbers. This was heavy stuff. Defendant testified that a portion of this material was obtained by him in Chicago, by having it ripped out of larger stuff, and that other portions he had to have sawed in the south, and that "in the course of business after we placed the order for timber in the south, with the Holton people for instance, it was some 4 or 5 months before we could get it." One of the plaintiffs testified that plaintiffs did not

keep this heavy stuff in stock. Under cross-examination, as to the length of time needed to get out the heavy stuff, he was asked, "It takes, you think, about 60 days to get that stuff, does it?" to which the answer was, "Yes; it takes that." It is argued that the witness did not mean that it took only about 60 days, but that the answer was sarcastic, and meant that it took much more than that time. Defendant contends here that ordinarily it took but about 60 days to furnish the special stock. It is of course true that if defendant's orders could not be filled in the contemplated course of business, and after the receipt of schedules of quality and sizes, in time to prevent the alleged delay in the construction of the building, defendant would have no right to recover damages for such delay.

The record raised, in our opinion, questions of fact under all the testimony, including the time required or taken for the delivery of lumber under the July orders, the testimony as to the time required to get out special sizes, and such knowledge as each party had of the general requirements of the building specifications, whether the defendant unreasonably delayed furnishing the lists of dimensions required, and whether plaintiffs could reasonably have procured the same by due diligence, after orders therefor were furnished by defendant, in time to have prevented the alleged delay in whole or in part. But these questions of fact we cannot pass upon without assuming the province of the jury. In view of the ground upon which the claim for special damages by reason of delay in the completion of the building was denied, the question of the sufficiency of the evidence offered to support such claim is not properly before us.

[3] Without controverting the familiar rule that special damages for delay are recoverable if within the reasonable contemplation of the parties at the time of making the contract (provided such damages are not so remote, uncertain, and speculative that they cannot be ascertained with reasonable certainty), it is insisted that damages occasioned by delay in completing the building were not within the contemplation of the parties to the contract in suit. This argument is based in part upon the fact that the profits which the plaintiffs could have made under the contract were but a very small fraction of the damages claimed by defendant, and that the latter amount to a large fraction of the value of the entire timber involved in the contract. But this argument is not conclusive. Evidence was offered (and rejected) tending to show that the plaintiffs knew of the requirements of the defendant's building contract, including the provision for damages for delay in construction; and such evidence would have tended to show that such damages were within the contemplation of the parties, even although not mentioned in the contract between plaintiffs and defendant. Iowa Mfg. Co. v. B. F. Sturtevant Co. (Eighth Circuit) 162 Fed. 460, 89 C. C. A. 346, 18 L. R. A. (N. S.) 575.

To what extent the alleged failure to make prompt deliveries under the July orders contributed to the delay in completing the building is not very clear. And as the case must be tried again on account of the erroneous exclusion of the question of damages for delay occasioned by the October refusal, what we have already said as to liabilities

under that refusal is enough to indicate our views upon the subject of liability for alleged delay in filling the July orders.

2. Defendant claimed there were shortages in amount and defects in quality of the lumber furnished under the July orders amounting to $345.97. The jury, as we construe the charge, were instructed that defendant was entitled to credit for such shortages and defects so far as shown. They were instructed, however, with respect to the creation of a breach of contract thereby "in the sense that a claim for damages could be based thereon," that (1) it must appear "that proper and reasonable notice of such shortages in quantity and defects in quality was given by the defendant to the plaintiffs and that the plaintiffs refused or failed, within a reasonable time subsequent to such notice, to supply such shortages in amount or to repair such defects in quality;" (2) that such notice of shortages and defects in order to have been "proper and reasonable under the circumstances, must have been given by the defendant to the plaintiffs in a manner conformable to the custom of the lumber trade so far as said custom applies to the contract" in question; and (3) that if notices of shortages and defects were "not given in proper time or with sufficient definiteness to enable plaintiffs to supply those deficiencies under their contract with their vendors and manufacturers" no proper or reasonable notice was given. Later, however, the instruction was given that:

"If the jury shall find from the evidence that the plaintiffs failed to fill completely all the orders for the timber in question which defendant Campfield made in the month of July, 1905, and that there was actually lacking timber of the value of $345.97 or any less amount, then the plaintiffs broke their contract and defendant Campfield is entitled to recover damages for such breach."

It would seem that the later instruction neutralized the former instructions to which we have referred, and as the judgment is to be reversed, it is perhaps unnecessary to now pass upon the correctness of the earlier instructions. As, however, the question may arise upon a new trial, it is proper to say that we see no error in the general proposition contained in the first instruction; that the second instruction should not have been given, for the reason that the testimony upon which it is based relates merely to "a usage of the lumber trade" which is not shown either to have been general or known to defendant; and that the correctness of the third instruction depends upon the defendant's knowledge of the plaintiffs' contracts with their vendors.

3. Several other alleged errors are discussed by counsel, but as these questions are not controlling and not very likely to arise upon a new trial, we do not deem it our duty to discuss them.

The judgment of the Circuit Court will be reversed and a new trial ordered.