## PLESOFSKY *v.* KAUFMAN & FLONACKER.

### (*Jackson.* April Term, 1918.)

1. **SALES.** Contract to sell on credit. Breach. Duty to minimize damages.

Where goods are contracted to be sold on credit, and the sellers thereafter breach their contract by refusing to deliver except for cash, the buyer, to minimize his damages, is under duty to take delivery for cash, if such goods are not purchasable from others, if the sellers' offer to deliver for cash is unconditional, does not, for instance, require a prepayment and balance cash on delivery, and if the buyer is able to accept the offer and pay cash. (*Post, pp.* 210-215.)

Cases cited and approved: Cook Mfg. Co. v. Randall, 62 Iowa, 244; Havemeyer v. Cunningham, 35 Barb. (N. Y.), 515; Creve Cocier Lake Ice Co. v. Tamm, 90 Mo. App., 189; Hirsch v. Georgia Iron & Coal Co., 169 Fed., 578; Coulter v. Thompson Lumber Co., 142 Fed., 706; Minnesota Threshing M. Co. v. McDonald, 10 N. D., 408.

Cases cited and distinguished: Lawrence v. Porter, 63 Fed., 62; Coxe Bros. & Co. v. Anoka Waterworks, etc., Co., 87 Minn., 56.

2. **SALES.** Action by buyer. Burden of proof.

The sellers have the burden to show that the buyer had cash, or by the use of credit was able to pay cash. (*Post, pp.* 215, 216.)

Cases cited and approved: Lillard v. Kentucky Dist. Co., 134 Fed., 168; Kentucky Dist. Co. v. Lillard, 160 Fed., 34; Howard Supply Co. v. Wells, 176 Fed., 512.

Case cited and distinguished: Campfield v. Sauer, 189 Fed., 579.

---

### FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to

the Court of Civil Appeals from the Supreme Court.
—Hon. H. W. Laughlin, Judge.

Banks & Harrelson, for plaintiff.

Ben Matthews, for defendant.

Mr. Justice Williams delivered the opinion of the
Court.

Plesofsky is a retail clothier in the city of Memphis, and purchased of the defendant firm, doing business in New Orleans, a bill of Palm Beach suits for delivery, for the summer trade, about eight months later. The sellers on accepting the order gave notice that they would not permit a cancellation.

Near the date set for delivery the sellers wrote the purchaser the following letter (April 14, 1916) in reply to a communication from him:

"The reason your order has not been shipped is that we have been unable to get our credit department to approve same. The only way we can have same approved for shipment is on a cash basis, allowing you six per cent. discount in lieu of the terms. If this will be satisfactory to you, let us have your check for $100 to apply on the account and we will let the goods go forward without delay, bill of lading attached."

A few days later the purchaser wrote the sellers, calling their attention to their previous statement that a cancellation of the order would not be accepted, and saying that he was solvent both at the time the order was given and at the date of his letter;

140 Tenn.—14

that he had "turned down" other dealers with whom he had done business and who had extended him credit; that he could not accept the sellers' new terms; and that he had made advance sales and his customers were asking about the goods. He said, further:

"I am responsible for any debt I make and have always met my obligations. I might have been slow at times, but have always paid same. This is a late date for you to be writing about your credit department and new terms after I have depended on you. . . . I expect that you will ship according to your agreement."

The facts set forth in this letter were shown to be such by plaintiff's proof in this action for damages for defendant's breach. There was no proof that he was able to pay cash, or to borrow funds in order to do so.

May the defendant sellers prevail upon the theory that the buyer should have availed of the opportunity to minimize the damages incident to their breach of his contract by taking delivery for cash according to the offer embodied in the letter of April 14, 1916?

The decision in *Lawrence* v. *Porter*, 63 Fed. 62, 11 C. C. A., 27, 26 L. R. A., 167, opinion by Judge Lurton, is referred to as supporting authority.

The rule in that case is thus summarized in the headnote in 26 L. R. A., 167:

"The duty to minimize loss requires the buyer, upon breach by the seller of a contract to sell goods upon credit, to accept the latter's unconditional offer . . . at a reduced price for cash on delivery,

where he is able to accept it, and goods of that kind and quality are not purchasable from other parties.''

The decision rests upon the theory that the disappointed buyer does not surrender or yield his original contract or any right of action he may have for its breach.

''It rests wholly upon the duty of mitigating the loss by replacing the goods by others, if they are obtainable by reasonable exertion. If this duty be such as to require him to buy from the delinquent seller, if the article can be obtained only from others, such a purchase from the seller is not the abandonment of the original contract by the substitution of another, nor would the purchase operate to the seller's advantage, save in so far as the damage resulting from his bad faith was thereby reduced. If the seller offers to sell for cash at a reduced price, . . . with the condition that it should operate as a waiver of the original contract, or of any right of action for its breach, then the buyer would not be obliged to treat with the seller, nor would the seller's offer it rejected, operate as a reduction of damages.''

In other words, the seller is not excluded from or to be treated as no longer a part of the market to which the buyer may be held to resort to mitigate his damages, in event the seller offers to sell as stated. We believe that this is a sound doctrine when thus understood and when its severe limitations are re-

garded.   Limited as it is, it must have a narrow application.

The decision in *Lawrence* v. *Porter* has been criticized in *Coxe Bros. & Co.* v. *Anoka Waterworks, etc., Co.*, 87 Minn., 56, 91 N. W., 265, but in our view the strictures are based upon a misconception of the theory underlying that decision, which we have just attempted to restate.   The criticism runs as follows:

"We quite agree with the proposition that it is the vendee's duty to minimize or mitigate loss growing out of a vendor's refusal to perform his contract, but we are convinced that it was a totally unwarranted and unprecedented application of that rule.   The cases cited fall far short of supporting it, and a careful research compels us to say that it is not sustained by a single authority.   The learned editor of the Lawyer's Reports Annotated, in the note before mentioned, refers to it as a 'somewhat striking' application of the rule as to the duty of a party to a contract, which has been broken without his fault, to keep down damages.   We quite agree with him. It is striking because it 'strikes out' of a contract entered into by a vendor and a vendee one of the conditions, and substitutes another, to which the parties have not assented.   It entirely abrogates the contract as made by the parties, and forces upon them another and wholly different one made by the court.

. .   It requires the vendee to secure and pay cash, less an amount equal to the interest  . . .   whether satisfactory or not."

The doctrine set forth in the Lawrence Case has been rejected by several other State courts. *Cook Mfg. Co.* v. *Randall,* 62 Iowa, 244, 17 N. W., 507; *Havemeyer* v. *Cunningham,* 35 Barb. (N. Y.), 515; *Creve Coeur Lake Ice Co.* v. *Tamm,* 90 Mo. App., 189, 198.

The doctrine announced in the Lawrence Case is not to be applied here. The facts of the pending case bring it within two of the exceptions recognized by Judge LURTON in the opinion.

The first of these is that the offer to sell must be unconditional. Here, the offer to deliver was not for cash, but on prepayment of $100, and balance cash on delivery, and with bill of lading attached, radical changes in the original contract. The sellers, not being willing to credit the buyer as they had contracted to do, demanded that he credit them to the extent of $100; and, harder still, they would even then ship the goods only on bill of lading attached to a draft. This was a stipulation that the buyer was not compelled to submit to. If the law should require him to do so in order to mitigate damages, it would require a small retailer, struggling to build up his credit, by his own hand to put the bar sinister on that credit by holding himself out as one who must buy his goods under the imposed safeguard of a bill of lading attached. The agents of the carrier or of the bank who should handle the papers would become aware of the plight of the buyer. The law will never place such a distasteful and hurtful burden on a con-

fessedly wronged buyer at the instance of those who stand as guilty breachers of their contract with him.

In a later case, after referring to the ruling as to the duty to mitigate damages announced in *Lawrence* v. *Porter,* supra, Judge LURTON himself recognized the narrowness of the rule of that case, saying:

"The duty imposed by the equitable rule referred to must be held within reasonable bounds. It is a rule which has never been regarded as requiring one to yield to a wrongful demand, that he may thereby save the wrongdoer from the legal consequence of his own error." *Hirsch* v. *Georgia Iron & Coal Co.,* 169 Fed., 578, 95 C. C. A., 76.

And that there must be no change in the conditions of the sale contract, see *Coulter* v. *Thompson Lumber Co.,* 142 Fed., 706, 708, 74 C. C. A., 38; *Minnesota Threshing M. Co.* v. *McDonald,* 10 N. D., 408, 87 N. W., 993.

Another limitation on the rule is that it does not apply unless the buyer is able to accept the offer and pay cash. The essential justice of this restriction lies in the fact that many tradesmen, especially small retailers, must operate on the capital of others. They must have a period of credit for the goods within which they may make sales of them and use the proceeds toward liquidation. Such a buyer enters into a contract for his supplies, disclosing that he must have credit. What fairness could there be in a rule which would permit the vending wholesaler or manufacturer at a late and critical date, when the buyer must have goods, to say:

"Pay cash; if you haven't it, use your credit and find it in bank. We tender you the equivalent or better for the discount you will have to pay."

That would be to mock the buyer, who frankly and confessedly from the outset was never able to pay cash and was in need of the credit. The breaching sellers in this case would.be in the attitude of saying to buyer that he did not have and was not worthy of credit from them, but that he must procure it from another.

As said, the decision in *Lawrence* v. *Porter,* supra, recognizes this in the following language:

"We do not, therefore, consider whether special damages might not, under some circumstances, be recovered, which were sustained by reason of the inability of plaintiffs [the purchasers] to pay cash for lumber to replace that which defendants had contracted to sell them on credit. It follows that if plaintiffs were able to buy, and did not, they cannot throw upon the defendants any special losses incident to their own failure to mitigate the injury so far as they reasonably could."

This being true, upon whom rests the burden of showing that the buyer had cash, or by the use of credit was able to pay cash?

It so happened that one of the counsel of the winning party in the suit of *Lawrence* v. *Porter* later went upon the bench of the same court, and he had to deal with the doctrine of that case. Judge KNAPPEN in *Campfield* v. *Sauer,* 189 Fed., 579, 111 C. C. A.,

14, 38 L. R. A. (N. S.), 837, restated the above limitations on the rule, and then dealt with this question of the burden of proof. He said:

"The burden of proving that the damages alleged have been sustained . . . could have been prevented or mitigated by" the plaintiff's "action rested upon" the seller guilty of the breach, citing *Lillard* v. *Kentucky Dist. Co.*, 134 Fed., 168, 178 [67 C. C. A., 74] (opinion so announcing being by Judge LURTON); *Kentucky Dist. Co.* v. *Lillard,* 160 Fed., 34, 40, 87 C. C. A., 190; *Howard Supply Co.* v. *Wells,* 176 Fed., 512, 516, 100 C. C. A., 70.

See, also, 8 R. C. L., p. 655.

If this were not the rule applicable in the pending case, we would have the law requiring the injured buyer to damn his credit by pleading and adducing proof that he was without cash or the credit that was requisite to raise the cash which could alone bring the suggested mitigation; and this, for the protection of the guilty party.

If and so far as the truly great judge who wrote the opinion in *Lawrence* v. *Porter* indicated a view to the contrary in regard to the burden of proof in such case, it does not find support in the earlier or later authorities, or sound principle.

The defendants did not carry the burden that was on them in the instant case.

Writ of *certiorari* to the court of civil appeals, which affirmed the judgment of the circuit court, is denied.

FENTRESS, J., dissents.