ARKANSAS SHORT LEAF LUMBER COMPANY *v.* McINTURF.

Opinion delivered April 29, 1918.

1. STATUTE OF FRAUDS—SALE OF LUMBER—PARTIAL PERFORMANCE.— Partial performance of a contract to sell and ship a certain quantity of lumber, will take the same out of the statute of frauds.

2. SALE OF CHATTELS—LUMBER—PRICE—PAYMENT OF EXCESSIVE PRICE —RECOVERY.—Under a contract for the sale of lumber the buyer contended that the price was $26.50 per thousand feet, whereas the seller contended it was $27 per thousand. *Held,* the buyer was not required to offer the seller $27 per thousand feet, before he could maintain an action against the seller for breach of contract. *Semble.* If the buyer did voluntarily pay a sum for the lumber in excess of the contract price, he could not later by suit recover the excess so paid.

3. DAMAGES—BREACH OF CONTRACT OF SALE—PROOF OF MARKET VALUE.—In an action for damages for breach of a contract to sell and deliver lumber, there being no market for the lumber at the place of delivery, it is proper to admit testimony as to the market value of the lumber at another point, in arriving at the amount of damages sustained by the plaintiff.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*M. Danaher* and *Palmer Danaher,* for appellant.

1. It was error to refuse defendant's instruction No. 10. The true rule of damages is the difference between the contract price and the price at which the vendee could have obtained similar goods at the time and place mentioned in the contract. The party injured must make every reasonable effort to diminish or minimize the damages. 146 N. W. 422; 46 Kan. 192; 131 N. W. 559, 564; 84 Am. Dec. 330; 20 *Id.* 341; Benjamin on Sales, 887; 105 U. S. 709-717; 6 Am. St. 356; 81 Ark. 347.

2. The minds of the party never really met, and the order was not given within the time limited.

3. The contract was void under the statute of frauds. Kirby's Dig., § 3984. The two cars first delivered were sample cars and not sufficient to take the contract out of the statute. 20 Cyc. 246, note 95. It was error to refuse instructions 6, 7 and 9.

4. The court erred in admitting in evidence the price list in Chicago. 92 Ark. 111; 121 *Id.* 150.

*Coleman & Gantt,* for appellee.

1. It was not error to refuse No. 10. 35 Cyc. 605 g; 49 Ark. 70; 74 *Id.* 270; 86 *Id.* 175; 102 *Id.* 152; 142 Fed. 706; 169 *Id.* 578; 111 C. C. A. 14; 189 Fed. 576; 79 Ark. 338.

2. Instructions 6, 7 and 9 were properly refused. They set up a false and misleading test or criterion. 20 Cyc. 246. All that appellant was entitled to was covered by its 1 and 2. No. 9 ignores appellee's case and is arbitrary. It states a *non sequitur.* 35 Cyc. 650.

3. The price list in Chicago was properly admitted in evidence. 83 Ark. 87; 112 *Id.* 110; 121 *Id.* 160; 35 Cyc. 638 (c).

SMITH, J. Appellee brought this suit to recover damages on account of the breach of an alleged contract for the sale of lumber. He alleged in his complaint that he and the appellant lumber company, hereinafter referred to as the company, entered into a contract on December 28, 1916, whereby he purchased two cars of green white oak lumber with the further agreement that if the two cars should prove satisfactory the company would sell and deliver him 500,000 feet in all of such lumber at the prices shown in the following list, to be delivered on cars at the company's mill at the rate of 100,000 feet per month, towit:

"3½ inch and 4 inch No. 1 common at $31.00 per M feet.
3½ inch and 4 inch No. 2 common at $19.50 per M feet.
3 inch        No. 1 common at $29.00 per M feet.
3 inch        No. 2 common at $17.50 per M feet.
2 inch        No. 1 common at $26.50 per M feet.
2 inch        No. 2 common at $16.50 per M feet."

The complaint alleged that it was further agreed that appellee should have thirty days after the delivery of said first two cars of lumber in which to notify the company of his acceptance of the remainder of said 500,000 feet of lumber, and that appellee within the time and as agreed upon notified the company that he would accept and purchase the remainder of said 500,000 feet of lumber, and an order for 102,000 feet, to be delivered within two weeks, was given and accepted and that order was filled before the company failed and refused to furnish and deliver the remainder, although specific directions in accordance with the terms of the contract were given, and that on or about June 18, 1917, the manager of the company notified appellee that the remainder of the order would not be filled, and this suit was brought to recover the difference between the contract price and the market price on the portion of the lumber which the company refused to ship.

The suit was brought by appellee upon the theory that the company refused to comply with the contract because lumber had advanced rapidly in price after the acceptance of the order, and in support of the allegations of the complaint appellee testified substantially as follows: That he received the last of the sample cars on February 3, 1917, and on February 17, 1917, gave notice that he would take the remainder of the half-million feet and at the same time gave an order for 34,000 feet of 3 inch, 34,000 feet of 3½ inch, and 34,000 feet of 4 inch stock, and this order is referred to as the six-car shipment. This order was accepted, and it was then agreed that as soon as it could be filled, specifications for the remainder would be given. The last car of the lumber ordered on February 17 was not delivered until June 18, 1917, and after that time the company refused to make further deliveries.

It is insisted on behalf of the company that the minds of the parties never met, and that the order for the lumber was not given within the time limited by the contract; that the contract was void under the statute of frauds,

and that the company had, in fact, filled all that part of the order upon the price of which the parties had agreed. A Mr. Murphy represented the company in the transaction, and he testified that a controversy arose over the price of the remainder of the lumber, and that appellee demanded the shipment of this remainder in 2 inch No. 1 common at $26.50 per thousand, whereas the company insisted that the contract price was $27 per thousand. The court instructed the jury that there could be no recovery of any damages unless they found that the contract price was $26.50 per thousand, and not $27, so that this issue is concluded by the verdict of the jury. There was also an issue of fact as to whether the orders were placed within the time limited by the contract; but an instruction was given which told the jury that there could be no recovery unless the contract in that respect was complied with; so that that question, too, passes out of the case under the verdict of the jury.

The court refused to give instructions numbered 6, 7 and 9, requested by appellant, which are as follows:

"6. The delivery of the first two sample cars was not sufficient to take the contract out of the statute of frauds."

"7. If you find from the evidence that the two cars of lumber first purchased by plaintiff were sample cars, the receipt of same by plaintiff was not sufficient to take the contract out of the statute of frauds."

"9. If you find from the evidence that at the time the six cars were ordered the defendant and plaintiff got into a controversy as to the price of the remainder of the lumber wanted, plaintiff contending for a price of twenty-six dollars and a half, and defendant for a price of twenty-seven dollars per thousand for number one common, and that the defendant offered to fill the order at twenty-seven dollars, but plaintiff refused to accept same at twenty-seven dollars, and at that the six cars about which there was no controversy were delivered, then the six cars can not be held to have been delivered as and for a part of the whole 500,000 feet, and the delivery thereof

does not take the case out of the statute of frauds, and was not sufficient to bind the bargain.''

(1)  We discuss these instructions together.  The case was not tried upon the theory that the shipment of the two cars took the transaction out of the statute of frauds, although it is argued that such would be the effect of their shipment if they were shipped in fulfillment of the contract.  The question in the case is that of the entirety of the contract and the instructions upon which appellee predicated his right of recovery required a finding that the parties ''entered into the contract mentioned in the complaint'' and that the company ''in pursuance and in part performance thereof delivered a portion of the lumber sold.''  If this predicate was true, then the contract was taken out of the statute of frauds by the part performance resulting from the shipment of the eight cars of lumber.  It is undisputed that eight cars were shipped and the instruction submitted to the jury the question whether they were shipped in part performance of the contract.  If they were, the contract was taken out of the statute of frauds.  *Walnut Ridge Mercantile Co.* v. *Cohn,* 79 Ark. 338.

Instruction numbered 9 was properly refused because it, too, leaves out of account the entirety of the contract. There was either a contract for the 500,000 feet of lumber or there was none, and the jury had already been told that there could be no recovery unless appellee was correct in his contention about the price.  Yet this instruction told the jury that if, at the time the six cars were ordered, which was some time after the contract was made (if one was entered into at all), a controversy arose over the price of the remainder of the order, the shipment of the six cars, about which there was no controversy, did not take the case out of the statute of frauds.  This instruction, in effect, directs a verdict, as it is undisputed that the contract was not in writing, and it is also undisputed that the controversy arose over the price of the remainder; yet to meet the requirements of other instructions the jury must have found that the company

was wrong in its contention and that it had contracted to sell this lumber at $26.50 per thousand and that the contract had been partly performed when the company interposed an objection to its further performance which contravened the terms of the contract. The instruction was, therefore, properly refused.

The court refused to give at appellant's request an instruction numbered 10, which reads as follows:

"10.    If you find from the evidence that the defendant agreed to sell to plaintiff lumber at the price of twenty-six dollars and a half, and refused to deliver it at that price, but offered to deliver same at twenty-seven dollars, you can in no event find for plaintiff in excess of fifty cents per thousand on the quantity so in controversy."

(2)    The refusal to give this instruction presents the difficult question in the case. It is insisted that the instruction is a correct declaration of the law upon the theory that one should minimize his damages and that appellee should have paid the $27 per thousand as demanded and then have sued for the alleged improper exaction of the fifty cents per thousand. But, in opposition to this contention, it is insisted that such a payment would have been voluntary, and it could not thereafter have been recovered; and we concur in this view. Appellant had no right to demand a price in excess of that stipulated in the contract, and, had appellee acceded to the demand made, he could not, after having volunarily done so, have maintained a suit for this excess, because the company was insisting that its demand conformed to the contract, and it denied then and denies now, that it demanded a price for the lumber in excess of that fixed by the contract. We are cited to numerous cases which hold that one must minimize his damages, and that the party who fails so to do can not recover any sum in compensation of the damages the accrual of which he should and could have prevented. But, while the doctrine of those cases is universally recognized and has been frequently applied by this court, none of them appears ever to have

extended this doctrine so far as to require one to abandon the assertion of a legal right in order that the party making the illegal and unauthorized exaction may not be required to pay an increased sum as damages.    35 Cyc. 605-g.

Counsel have cited us to only one case which appears to be exactly in point, and in our own investigation we have failed to find any other.    But the case cited appears to be in point and to sustain the view which we have just expressed.    The case referred to is that of *Campfield* v. *Sauer,* 111 C. C. A. 14.    In that case the plaintiff sued for the unpaid price of lumber furnished under a contract, and the defendant set up a counter-claim for breach of contract in failing to deliver lumber as demanded.    A difference arose over the price of the lumber, and the plaintiff wrote the defendant as follows:

"We are perfectly willing to furnish the lumber, provided only you will stand the difference caused by the increase in price since our original agreement and as per your verbal agreement above mentioned."

The court there said: "It is clear that had defendant accepted this offer he would have abandoned all claim for damages for the difference in price so paid.    He was under no obligation to make such waiver for the sake of saving plaintiffs from liability for the damages which might result from delay through purchasing elsewhere. *Coulter* v. *B. F. Thompson Lumber Co.* (Sixth Circuit), 142 Fed. 706, 74 C. C. A. 38; *Hirsch* v. *Georgia Iron & Coal Co.* (Sixth Circuit), 169 Fed. 578, 95 C. C. A. 76.    In the latter case Judge Lurton, speaking of the rule recognized in *Lawrence* v. *Porter,* that one who has been damaged by the breach of a contract must do nothing to aggravate his injuries, and all that he reasonably can to mitigate the loss, said:    'The duty imposed by the equitable rule referred to must be held within reasonable bounds.    It is a rule which has never been regarded as requiring one to yield to a wrongful demand that he may thereby save the wrong-doer from the legal consequences of his own error.' "

No attempt was made to show that appellee could have purchased this lumber elsewhere at the time delivery should have been made at less than the prevailing market price. A different question would be presented had the testimony so shown. It is true he could have secured the lumber from appellant when he placed his order at $27 per thousand, but it was the duty of the appellant company to comply with its contract and to furnish the lumber at the agreed price, or to offer to do so, and it had no right to demand of appellee that he yield the point in controversy for the purpose of minimizing the damages when it had complete power to comply with its contract.

(3)    The court gave the following instruction on the measure of damages:

"3.    If you find for the plaintiff, the measure of his damages will be the difference, if any in his favor, between the contract price and the reasonable market value of the lumber at the time and place same should have been delivered by defendant to plaintiff according to the contract."

And it is urged by appellant that, as the place of delivery was the appellant's mill, where the lumber was manufactured, error was committed in permitting witnesses to testify what the market value of similar lumber was in Chicago. In testifying about the prices in Chicago appellee referred to a price list which appears to have been published by the Lumberman's Bureau at Washington City, which he designated as a United States Government publication. It is insisted that error was committed in this respect for two reasons, first, that the book did not undertake to fix the prices at appellant's mill, and for the further reason that the prices named in the book were those of September, 1917, whereas the lumber should have been delivered in lots of 100,000 feet commencing in March and ending in August. The witness testified, however, that he bought and sold lumber constantly and that he was familiar with the prices of lumber both at appellant's mill and in Chicago, and that the

prices stated in the book were correct and were the prices generally used by lumbermen in buying and selling.   He further testified that his contract called for lumber on board cars and that the price at any given point was ascertained by deducting the freight charges to Chicago from the price at Chicago and that he knew this freight rate to Chicago and ascertained the price at appellant's mill by deducting the freight from the Chicago price.   He also testified that there was no variation in the price of lumber after the time he placed his order under the contract and that stated in the book, which appellee said he was using for the purpose of refreshing his recollection. This testimony was not undisputed, and there was testimony tending to show that the difference between the market price and the contract price was much less than appellee stated.   But the jury did not give appellee judgment for as large an amount as his testimony would have warranted, and the verdict returned was evidently arrived at by the jury by reconciling the conflicting testimony in regard to the value.   It was not improper for the witnesses under the circumstances stated to testify what the Chicago prices were, as there was no market for this lumber at appellant's mill except for the purpose of shipping to some one of the markets to which such lumber was ordinarily shipped.   *Allen* v. *Nothern,* 121 Ark. 150.

Finding no prejudicial error, the judgment is affirmed.