[No. 10126.   Department One.   September 12, 1912.]

F. V. WALDRIP, *Respondent*, v. J. F. HILL, *Appellant*.[1]

DAMAGES—BREACH OF CONTRACT—DUTY TO MITIGATE DAMAGE. In an action for breach of a contract to employ teams continuously at a stated sum per diem for a definite period, lack of diligence on the part of the plaintiff to secure other work for his teams is not shown by his refusal of defendant's offer to employ his teams in hauling sand at a stated price per load, where that involved the additional expense of employing teamsters and a man to assist in loading and the profits were uncertain.

CONTRACTS—BREACH—SUBSTITUTION—WAIVER OF BREACH. In an action for breach of a contract to employ plaintiff's teams at a stated sum per diem, the jury was warranted in finding that defendant's offer to give the plaintiff employment at hauling sand at a stated sum per load was with a view to substituting it for the old contract, acceptance of which would have waived the breach.

DAMAGES—BREACH OF CONTRACT—ELEMENTS. In an action for breach of a contract to continuously employ plaintiff's teams at a specified per diem for a stated period, the expense of feeding the teams is not an element to be deducted, since it was not an expense incurred solely in the prosecution of the work, and it must be incurred regardless of the performance of the contract.

Appeal from a judgment of the superior court for Spokane county, Yakey, J., entered August 5, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Allen & Allen,* for appellant.

*McCarthy & Edge* and *H. H. Cleland,* for respondent.

PARKER, J.—This is an action to recover damages, claimed by the plaintiff to have resulted to him from the defendant's breach of a contract entered into between them. In September, 1910, the defendant was engaged in street contracting work on a somewhat extensive scale in Spokane. At that time the plaintiff was engaged in ranching in Whitman

[1]Reported in 126 Pac. 409.

county, and had several teams of horses. The plaintiff claims that at that time a contract was entered into between them whereby it was agreed that he would take four of his teams to Spokane where the defendant would furnish work for the teams, the plaintiff to furnish the teamsters, for a period of seven month's continuous work for all of the teams, and pay the plaintiff therefor at the rate of $6 per day of eight hours each for each team; that in pursuance of this contract, the teams were taken by the plaintiff to Spokane and put to work for the defendant in hauling material used in his street contract work; that the defendant failed to furnish continuous work for the teams as agreed; and that the time thus lost to the plaintiff during the seven months resulted in his damage in the sum of $1,095. The plaintiff claims damages for the total number of days his teams were not furnished work by the defendant during the seven months, at the rate of $6 per day, less $2.75 per day for teamsters' wages which he was required to pay while the teams were at work, and less the sum of $233 which he was able to earn with his teams elsewhere during the seven months when they were not working for the defendant. Thus measured, he claims his damages amount to $1,095.

The defendant denies that he agreed to furnish work for the plaintiff's teams for any stated period, and also claims that the plaintiff, with due diligence, could have procured work for and earned with his teams during the seven months claimed by him as the duration of the contract, an equal or greater amount than he would have earned had his teams been continuously employed by the plaintiff. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff for the sum of $919.50, from which the defendant has appealed.

The contention of counsel for appellant that respondent did not use due diligence in his efforts to earn money with his teams during the time they were not employed by appellant at the agreed per diem compensation is rested almost

wholly upon evidence introduced tending to show that appellant offered him a contract (which he declined) for hauling sand at a stated price per load. Had respondent accepted this offer, his profits would have been at least to some extent uncertain, though the evidence tends to show that his profits might have been as much or more than they would have been at the $6 per day originally argeed upon. Respondent would have been required under such contract to incur the expense, in addition to his teamsters' wages, of employing another man to assist in the loading of the wagons, as well as some other expense, in order to have carried on the work under such a contract with any prospect of making it profitable. This is enough to show that the offered contract was of quite a different nature than the per diem contract, though the work to be done was substantially of the same nature. It seems to us that the refusal on the part of respondent to accept this new contract offered him by appellant did not show want of due diligence on the part of respondent in earning money with his teams during the time they were not employed under the per diem contract. In *Chisholm v. Preferred Bankers' Life Assur. Co.*, 112 Mich. 50, 70 N. W. 415, 417, the court said:

"It is clear that one who has been prevented from performing a contract of service should not be required to accept a new employment under circumstances which permit the claim that he consents to a modification of the contract, and an abandonment of his right of action; and, ordinarily, acceptance of service in silence would at least give color to a claim that the contract was modified by consent, tacit if not express. See *Brighton v. Railway Co.*, 103 Mich. 426, 51 N. W. 550, and cases cited. It is, of course, possible that an offer of employment might be couched in such terms as to save the rights of a discharged servant, and, when it is, it may be that the evidence should go to the jury, with a view to mitigation of damages; but we discover no evidence in this case tending to show that such employment was offered under circumstances inconsistent with the condition that such em-

ployment should be a modification of the contract, and the plaintiff could not safely accept the offer."

It seems clear to us that this new contract was offered by appellant to respondent with a view to substituting it for the per diem contract, and that the evidence warrants the conclusion that by accepting it respondent would have waived all his rights under his per diem contract. Whether or not the evidence warrants such a conclusion as a matter of law we need not decide, since the evidence of the offer of the new contract and its nature, as compared with the per diem contract, went to the jury for their consideration in determining respondent's duty as to his acceptance of such offered contract under all the circumstances, and the jury found in his favor upon that question.

In *Birdsong v. Ellis*, 62 Miss. 418, where there was involved an unqualified discharge of an employee and a subsequent offer to the employee to resume work under the contract of employment, the court said:

"The offer made by Birdsong must be construed as a proposition to Ellis to resume and continue business under the terms of the original contract. If it had varied the terms of the first engagement, or if anything had occurred to render further intercourse or association between the parties offensive or degrading, or if Ellis had engaged in other employment incompatible with his returning, he might have rejected the offer with safety."

The following lend support to this view: *Jackson v. Independent School Dist. of Steamboat Rock* (Iowa), 77 N. W. 860; *People's Co-Operative Ass'n v. Lloyd*, 77 Ala. 387. In the case last cited, it was held that the employee was not required to resume his work at a less wage in order to mitigate his damage, since "this would have operated a modification of the contract and an abandonment of all claims to higher wages."

Counsel for appellant contends that the trial court erred in not permitting them to prove and submit to the jury the

fact that respondent was at a continual expense of $1.25 per day per team for feed and care of his teams, the argument being that such expense should have been deducted from respondent's damages, since his net earnings would in any event have been that much less had his teams been at work under the per diem contract. The fallacy of this argument is found in the erroneous assumption that appellant's damages are to be measured only by his loss of net profits which he would have made by continuous work under the per diem contract after deducting every possible expense incurred by him while engaged in such work. It seems quite clear to us that the expense to be deducted from the $6 per day which would have been received by respondent by continued work under that contract was only such expense as was incurred by him solely in the prosecution of that work. His teamsters' wages was the only expense so incurred, and this expense he voluntarily deducted. It would be as reasonable to require him to deduct expense incurred for his own board. The very fact that such expense must be incurred regardless of his performance of the per diem contract is sufficient reason for holding that it is foreign to the question of his damage in this case. We think the court's ruling on this question is free from error.

The other questions involved are only questions of fact going to the sufficiency of the evidence to support the judgment. We deem it sufficient to say that a reading of the evidence convinces us that no cause for interference with the judgment is thereby disclosed.

The judgment is affirmed.

MOUNT, CROW, GOSE, and CHADWICK, JJ., concur.