### KOKOMO STEEL & WIRE CO. v. REPUBLIC OF FRANCE.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1920. Rehearing Denied December 9, 1920.)

No. 2735.

1. Sales ⬤�longdash79—Parties may agree to place of delivery different from that presumed.

Though the law presumes, in the absence of agreement, that the seller's place of business was mutually intended as the place of delivery, and that presumption is not overcome by a requirement that the seller place the goods on cars and prepay the freight, the parties to a contract of sale may nevertheless stipulate for a different place of delivery, and, if their intention so to stipulate is expressed in the contract, it will govern.

2. Sales ⬤�longdash79—Contract held to require delivery alongside steamer.

Where a contract for the purchase of a quantity of barbed wire, known to be intended for export, not only stated the price as free alongside steamer, which would not be controlling as to place of delivery, but in a separate paragraph specified for delivery free alongside ocean steamer in New York, and required the seller to present shipping documents

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

showing delivery as aforesaid, the wire remained the property of the seller until delivery at the designated place, and the railroad and lighterage companies were the seller's agents, so that the seller could not require payment of the price on presenting railroad bills of lading with freight prepaid or to be deducted. ·.

3. Sales &=89—Buyer's instructions held not to alter contract place of delivery.

Where a contract of sale required delivery alongside steamer, a letter of instructions relating to billing, marking, and shipping, which˝ directed consignment of the goods to the buyer's shipping agent, with rail bills of lading marked "for export," did not change the place of delivery, or at least did not change the requirement of the contract that the seller should present shipping papers before he was entitled to payment.

4. Sales &=180(1)—Buyer held not to have waived requirement as to delivery.

The fact that the fiscal agent of the buyer paid for certain quantities of wire intended for export on notice of its receipt at the rail terminus at the port does not waive the right of the buyer to insist on the provision of the contract that the seller present shipping documents before payment.

5. Sales &=180(1)—Waiver of delivery to steamer does not establish right to deliver at railroad.

Even if a buyer had waived his right to require delivery alongside steamer before payment by making payments on certain shipments on notice of the goods' arrival at the rail terminus at the port, that waiver would not entitle the seller to require payment on loaded goods on cars at its factory.

6. Trial &=404(5)—General finding incorporates special finding supported by evidence.

In an action for breach of a contract for the sale of barbed wire, to be delivered free alongside ship, where defendant claimed a waiver of the provision for delivery, a general finding for the buyer incorporated in legal effect a special finding, which˝ was supported by evidence, that the payments by the buyer's agent were made on the understanding that the notices showed arrival of the goods alongside ship.

7. Sales &=418(7)—Buyer not required· to accept delivery at another place to minimize damages.

The measure of the buyer's damages for breach of a contract for the sale of wire desired for immediate export, and which the seller was to deliver alongside steamer is the difference between the contract price and the market price of the wire at the port; the buyer not being required, in order to minimize the damages to accept the seller's offer for delivery on cars at its factory.

In Error to the District Court of the United States for the District of Indiana.

Action by the Republic of France against the Kokomo Steel & Wire Company for breach of contract for the sale of barbed wire. Judgment for the plaintiff, and defendant brings error. Affirmed.

Conrad Wolf, of Kokomo, Ind., for plaintiff in error.

Ferdinand Winter, of Indianapolis, Ind., for defendant in error.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

BAKER, Circuit Judge. Judgment was rendered against Kokomo Company for damages resulting from its refusal to complete deliveries of barbed wire to the republic of France. It attempted to jus-

tify its stand on the ground that the buyer had first refused to pay for further deliveries, except on terms that violated the contract as signed, and especially violated the contract as practically construed by the acts of the parties during its partial execution.

Parts of the contract, material to the decision, are these:

"Price, $2.98 per hundred pounds, f. a. s. New York City."

"Packing: Wire shall be wound on reels furnished by seller and to become property of buyer, and suitably packed by seller, without cost to buyer, for ocean carriage."

"Time and mode of delivery: Delivery shall be completed within 90 days from date (August 23, 1915) at the rate of 1,000 tons each 30 days. Time is of the essence. Delivery shall be made free alongside ocean steamer, New York City."

"Terms of payment: Payment shall be made by buyer for each lot delivered within 5 days after presentation to it at the office of its agents, Messrs. J. P. Morgan & Co., 22 Wall street, New York City, of proper invoices, shipping documents showing delivery as aforesaid, and inspection certificates."

Situation of parties when making the contract: Kokomo Company was a manufacturer of steel products in Indiana. France was at war, and barbed wire was an urgently needed material. France was represented in this country by an official commission. Under and through the commission J. P. Morgan & Co., of New York, were financial agents, and G. W. Sheldon & Co., of New York, were shipping agents, looking after ocean transportation to France.

Four days after the date of the contract the buyer mailed to the seller a letter of "instructions as to billing, marking, and shipping." This stated that certain identifying marks should "appear plainly on each package"; that the invoices should "give full particulars as to package numbers, marks, gross and net weight of packages, and the quantity contained in each package"; that "shipment should be consigned to G. W. Sheldon & Co., 24 State street, New York City, with rail bills of lading marked 'For Export, Lighterage Free';" and that "original bills of lading should be mailed" to J. P. Morgan & Co.

Probably no controversy would have arisen if the seller had completed its deliveries (either on the cars at Kokomo or alongside ship in New York harbor) within the time specified in the contract. As the buyer was anxious to get the material, it waived the seller's delays; but those delays ran the shipments into the railroad congestion and embargo of 1916, and finally a situation developed in which cars leaving Kokomo would not arrive in New York until months later. From the first Sheldon & Co. (in charge of ocean transportation for the buyer) had been notifying Morgan & Co. of the arrival of each lot in New York, and Morgan & Co. had been paying the seller within five days thereafter. While shipments were going through promptly no dispute arose; but when months elapsed before shipments from Kokomo would arrive in New York, the seller took the position that it was entitled to payment within five days after Morgan & Co.'s receipt by mail of invoices, inspection certificates, and railroad bills of lading showing freight and lighterage charges prepaid, the contention being that the bills of lading constituted the "shipping documents" mentioned in the payment provision of the contract. Thereupon the buyer insisted that it was under no obligation to pay until five days after the seller's

presentation to Morgan & Co. of "documents showing delivery free alongside ocean steamer in New York Harbor." This was the parting of the ways; the seller declined to make further shipments except upon sight drafts attached to bills of lading; and the buyer went into the market in New York and purchased wire to cover the seller's shortage, and then sued for the difference between market and contract prices. A jury was waived and the court made a general finding in favor of the buyer.

[1] Parties may expressly agree in their writing upon the place of delivery. If a seller has his goods at his shop or produces them at his factory, and if nothing is stated in the writing with respect to place of delivery, the law operates upon a presumption of fact that the seller's place of business was mutually intended. If a seller assumes to put the goods aboard cars at his own expense, and further assumes to pay the freight to the buyer's station, and if these obligations are expressed only as affecting the seller's net price, the seller has fulfilled his obligation to deliver by placing the goods on the cars and title passes at once to the buyer. But the seller may additionally agree that he will deliver the goods, by his own carriers, to the buyer at a designated place; that pending delivery the title shall remain in the seller; or that prior to delivery the title, as between the parties, shall pass to the buyer; and that, irrespective of where the title is during transportation of the goods, payment shall be conditioned upon actual delivery; that is, that the seller shall be an insurer of safe transportation and actual delivery to the buyer. The problem is to ascertain the intent of the parties. United States v. Andrews, 207 U. S. 239, 240, 28 Sup. Ct. 100, 52 L. Ed. 185; Delaware, etc., Ry. Co. v. United States, 231 U. S. 363, 34 Sup. Ct. 65, 58 L. Ed. 269; Chandler Lumber Co. v. Radke, 136 Wis. 495, 118 N. W. 185, 22 L. R. A. (N. S.) 713; McCandlish v. Newman, 1 Phila. (Pa.) 268; 19 Cyc. 1082; 20 Cyc. 841, note; 35 Cyc. 171, note, 173, 174, 188.

[2] In the "price" provision of the contract in suit the seller agreed to prepay, or permit the buyer to deduct from the gross price, the freight and lighterage charges for transporting the goods from Kokomo to the side of an ocean steamer at New York. If this were the only place in the contract where the expression "f. a. s. New York" was used, the place of delivery would be aboard cars at Kokomo. But there is a separate paragraph devoted exclusively to delivery, and therein the seller engaged to deliver "free alongside ocean steamer, New York." And in the next paragraph, which concerns payment, the condition is that the seller shall present to Morgan & Co. "shipping documents showing delivery as aforesaid." The repetition of the word "free" in the delivery provision bringing forward the seller's previously made promise to pay transportation charges does not cancel "alongside ocean steamer, New York," as the place of delivery. And counsel's stressing of the adjective "shipping" in the payment paragraph is futile; the substantive things are the "documents showing delivery as aforesaid." Under this contract the goods remained the property of the seller until delivery at the designated place; and the railroad and lighterage companies, which the seller was free to select, were the sell-

er's agents.  And if the seller did not choose to have some other agent at New York to present the necessary documentary proofs to Morgan & Co., it should have required its transporting agents to procure the certificate of the master of the lighter and (or) the acknowledgment of the master of the ship.

[3] Is the legal effect of the contract altered by the buyer's letter of instructions?  It said nothing about place of delivery or conditions of payment.  It related only to "billing, marking, and shipping."  Billing and marking could not bear upon the question.  Counsel's contention is that the direction to consign the goods to Sheldon & Co. with rail bills of lading marked "For Export, Lighterage Free," altered the contract so that upon the seller's putting of the goods aboard cars at Kokomo with freight and lighterage charges prepaid the title passed to Sheldon & Co. for the buyer, and further that upon such passing of title all obligations of the seller were at an end.  If the seller did not otherwise know, its obligation in the "packing" provision to prepare the goods "for ocean carriage" informed it of the ultimate destination of the goods.  Like information was given by the direction how to mark the bills of lading.  As the seller knew that somebody other than itself must arrange for the ocean carriage, the trial court was justified in finding that the direction respecting consignment to Sheldon & Co. was for the purpose of facilitating the securing of transportation to France by the buyer's shipping agents and not for the purpose of passing title at Kokomo.  But, even assuming that title passed at Kokomo, the question here is not when title passed, but when the buyer's obligation to pay matured.  And the letter of instructions about billing, marking, and shipping leaves untouched the very particular requirements of the contract in regard to payments.  No payment was due until after the seller had delivered the goods to the buyer at the designated place. For the existence of such an obligation it was immaterial where the title was during the process of delivering the goods.

[4-6] Nor was the situation changed by what occurred between Sheldon & Co. and Morgan & Co.  During the early part of the execution of the contract Sheldon & Co. mailed notices to Morgan & Co. of the arrival of goods and Morgan & Co. within five days remitted to the seller.  These first notifications were given by Sheldon & Co. upon the arrival of goods at railroad freight terminals in New York.  Sheldon & Co. were the buyer's agents for ocean carriage, but the seller, failing to have its own notification agent in New York or to require its rail and lighter transporting agents to give Morgan & Co. the necessary evidence of delivery alongside ocean steamer, either adopted the acts of Sheldon & Co. as acts of its own agents or failed entirely to notify Morgan & Co. of the arrival of goods.  If payment by Morgan & Co. within five days after arrival of goods at rail terminals in New York should be considered a waiver of delivery alongside ocean steamer, such a conclusion would not establish the buyer's acquiescence in the seller's contention that delivery to a railroad at Kokomo was delivery to the buyer.  But the trial court, in its general finding for the buyer, incorporated in legal effect a special finding (supported by the evidence) that Morgan & Co. paid on their understanding of the no-

tices given by Sheldon & Co. that the goods had arrived alongside ocean steamer. When by reason of the railroad companies' long delays in shipments between Kokomo and New York the French commission called the attention of its shipping and financial agents to the terms of the contract respecting' delivery and payment, Sheldon & Co. thereafter gave no notices except on arrival of goods alongside ocean steamer and Morgan & Co. made no payments except after such arrival. If Sheldon & Co. were the seller's agents in giving the erroneous notices, they were likewise the seller's agents in changing to proper notices. But in any view there is no basis for waiver (or estoppel, see Ewart's Waiver Distributed, c. 2), for neither the government at Paris, nor the French commission in this country, nor Morgan & Co. ever knowingly permitted or made a payment until after the seller had delivered the goods according to contract.

[7] There remains a question concerning the amount of the finding, which was based on the difference between the contract price and the market price in New York when the seller refused to complete deliveries according to contract. Counting on the general rule that, after the seller's breach, the buyer was obliged to use reasonable diligence to protect itself from loss and to keep the damages at the minimum, counsel insists that the buyer should have accepted the seller's continuing offer to furnish barbed wire at the contract price and to place the wire on board cars at Kokomo and to prepay rail and lighter transportation charges and to take in payment the buyer's acceptances of sight drafts attached to the rail bills of lading. But at that time the seller was more than a year in default on a 90-days contract in which time was expressly made of the essence. The urgent need, which induced the buyer to overlook the seller's delays, continued to make time of the essence of the situation created by the seller's refusal further to perform. The seller had no wire in New York and offered to deliver none. What the buyer wanted and was entitled to have was wire in New York ready for ocean carriage, not a repudiating seller's offer of wire at Kokomo to be shipped to New York harbor at the buyer's risk. No duty required the buyer to yield to the wrongful demand and thus save the seller from the legal consequences of its repudiation of the contract.[1]

The judgment is affirmed.

---

[1] On damages the seller cited: Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117; Lawrence v. Porter, 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167; McKnight v. Dunlap, 5 N. Y. 537, 55 Am. Dec. 370; Penn. Ry. Co. v. Washburn (D. C.) 50 Fed. 335; Deere v. Lewis, 51 Ill. 254.

And the buyer cited: 5 Birdseye's Consol. Laws of N. Y. p. 6292, § 148; Goldfarb v. Campe Corp., 99 Misc. Rep. 475, 164 N. Y. Supp. 583; Hirsch v. Georgia Iron Co., 169 Fed. 578, 95 C. C. A. 76; Campfield v. Sauer, 189 Fed. 576, 111 C. C. A. 14, 38 L. R. A. (N. S.) 837; Waldrip v. Hill, 70 Wash. 187, 126 Pac. 409; Chisholm v. Preferred Bankers' Life Assurance Co., 112 Mich. 50, 70 N. W. 415.