## MEYER et al. v. W. R. GRACE & CO.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1923.)

No. 3087.

1. **Appeal and error ⬅171(3)—Theory of case below controls on appeal.**
   Where the trial court's theory as to effect of the pleadings was not objected to by defendants, they could not urge such an objection on writ of error.

2. **Sales ⬅199—Passing of title depends on intention.**
   Title will pass at such time as the parties intend, such intent being found in the contract, and their acts, if any, which might show an intent, not otherwise ascertainable.

3. **Sales ⬅200(3)—Title to imported peanuts held to pass to buyer in Chicago when they arrived in New York.**
   Under contract for sale, by importing house to Chicago firm, of peanuts to be imported from Java, title to the peanuts *held* to pass to buyers on arrival of goods at New York and their appropriation to the sale, for a provision of the contract for inspection before payment was qualified by a clause, "Rejection to constitute delivery," and clause as to making claim for defects promptly, so as to give the buyer the right, if goods were defective, not to claim that title had not passed, but to claim damages, if claim therefor were presented in the time limited in the contract.

4. **Estoppel ⬅63—Sales ⬅340—Telegram held not an estoppel nor election to sue for damages rather than price.**
   The fact that seller, when notified that buyers refused to take up draft for price of goods, wired that, unless the draft were taken up at once, it would sell the goods and sue buyers for damages, was not a necessary step in pursuing any sort of remedy, and hence was not a legal election of the remedy of suit for damages rather than for the price of the goods, nor did the telegram create any estoppel.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by W. R. Grace & Co. against Anton M. Meyer and others, doing business as the United Fig & Date Company. Judgment for plaintiff, and defendants bring error. Affirmed.

W. R. Grace & Co., plaintiff below and defendant in error here, was a New York importing house with a branch office at Chicago, and plaintiffs in error were partners under the name of the United Fig & Date Company at Chicago.

On November 24, 1919, the parties signed the following document:

"W. R. Grace & Co. has this day sold and the United Fig & Date Company have this day bought the goods described below as per terms, conditions and prices hereinafter named.

"Time of shipment: November-January from Java.

"Shipping instructions: Ex dock, duty paid, f. o. b. New York.

"Terms: Net cash by sight draft with bill of lading attached; payable on arrival and inspection; payment in New York funds.

"These goods are sold in New York and at New York weights. All goods in bags sold gross for net. Claims will not be considered by sellers unless made within three days after receipt of goods. The responsibility of sellers ceases on obtaining shipping receipt in good order. Sellers' fulfillment is contingent upon strikes, upon fires, accidents, delays by carriers, actions of governmental authorities or other causes beyond their control. Any increase in duty for buyers' account.

"Quantity, 55 tons; description 1919 crop, fair average quality, Java shelled peanuts; price 13¾ cents.

"Risk of delay or stopping of supplies in the country of origin or during transit for buyers' account. If declaration of steamer or steamers is made by sellers, any contingencies affecting cargo thereon operate to cancel contract or reduce quantity named proportionately at sellers' option. Goods to be merchantable quality. Rejection to constitute delivery."

Plaintiff procured the goods to be shipped from Java in December, 1919. On the arrival of the goods at the dock in New York plaintiff paid the duty and had them duly put aboard cars for transportation to Chicago. Bills of lading ran to plaintiff as consignee, and were duly sent with drafts attached to Chicago, and defendants were notified. After inspection the defendants refused to pay the drafts and take the goods from the railroad. Shortly afterwards plaintiff caused the goods to be stored in a public warehouse.

Plaintiff's action was for the recovery of the purchase price, not for damages for refusal to take the property from plaintiff. Defendants filed a plea of the general issue. As the declaration was verified, the defendants were required, in conformity to the Illinois practice, to support their plea by an affidavit setting forth a meritorious defense. In the affidavit the only defense set forth was that the peanuts shipped and tendered to the defendants under the terms of the contract were not of the quality as therein bargained for, in that the said peanuts were wormy, unsound, and unmerchantable. Plaintiff had a verdict and judgment for the full purchase price, and the defendants prosecute this writ of error.

Christopher King, of Chicago, Ill., for plaintiffs in error.
Albert S. Long, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Reliance for reversal is based principally on the contention that plaintiff should have sued for damages measured by the difference between the contract price and the market value at the time when defendants refused to receive the goods, instead of predicating the action upon a right to recover the full purchase price on the ground that title had passed to the defendants.

[1] Throughout the trial the court asserted, and acted on the assertion, that defendants' affidavit of a meritorious defense had the effect, under the Illinois practice, of admitting the whole of the plaintiff's case as pleaded in the verified declaration, except the one issue respecting the quality of the goods; and defendants never suggested any intention of amending their affidavit of defense in any respect except a suggestion that they desired to introduce evidence to show that plaintiff had elected a different remedy. Whether the trial court was right or wrong with respect to the Illinois practice and the federal conformity statute (Comp. St. § 1537), the defendants in this court cannot raise an issue which they agreed in the trial court did not exist.

[2, 3] But, apart from all infirmities in the assignments of error, we think that on the undisputed facts in the record the title passed to defendants at New York. Title will pass at such time as the parties intend, and their intent is to be found in their contract and in their acts, if any, which might show an intent not otherwise ascertainable. Kokomo Steel & Wire Co. v. Republic of France (C. C. A.) 268 Fed. 917, 920. In the present case there was no evidence bearing on the question of intent except the contract itself and the testimony show-

ing the nature and place of business of the parties. Plaintiff was an importer. The document states that the plaintiff "has this day sold" and the defendants "have this day bought" 55 tons of Java shelled peanuts of the 1919 crop. The document further states that "these goods are sold in New York and at New York weights." The document further discloses that the goods were not then in New York, and therefore could not at that moment be appropriated by the parties to filling the sale. For the purpose of appropriating goods to the sale the plaintiff was to have the goods shipped from Java between November and January, was to pay the duty, and see to the transfer of the goods from the dock to the freight cars at New York. The document particularly provides that the responsibility of plaintiff ceases "on obtaining shipping receipt in good order." In appropriating the goods at New York and at New York weights to the sale, the document provides that "all goods in bags sold gross for net." In order to emphasize that the title passed as between the parties immediately upon plaintiff's appropriation of goods at New York, it was provided that plaintiff's appropriation of goods to the sale should be contingent upon strikes, fires, accidents, etc., and that any increase in duty and all risk of delay or stopping of supplies in the country of origin or during transit should be for the defendants' account. Against these provisions, which indicate that the title passed at New York as soon as the plaintiff at New York appropriated goods to the sale, the only condition is the defendants' right to an inspection. It must be confessed that ordinarily any provision recognizing a buyer's right to inspect would evidence an intent that title to the goods should not pass unless, after inspection, the buyer accepted them. In the present document the word "inspection" occurs only in the clause giving the terms of payment and in connection with the word "arrival." Payment is to be made "on arrival and inspection." It would seem that the result of "inspection" could not differ from the effect of "arrival." But any possible weight that otherwise might be given to the presence of the word "inspection" is overcome by the agreement that "rejection shall constitute delivery." Physically, of course, a rejection cannot be an acceptance. But the provision emphasizes the legal agreement that rejection at Chicago should have no different effect from delivery at Chicago of the goods, the title to which had passed to the defendants at New York. If the plaintiff had appropriated to the sale at New York goods of the general description agreed upon, then the fact that the defendants might prevail in the contention that the goods were not merchantable would not change the title but would only give the defendants the right to claim damages if such a claim was presented to the plaintiff within the three days limited in the document.

[4] Again passing questions of practice, we find no defense in defendants' contention that plaintiff could not maintain this suit on account of having elected to pursue an inconsistent remedy. When the plaintiff's New York office was notified of defendants' refusal to take up the draft, the plaintiff wired that unless the draft was taken up at once it would sell the goods and sue the defendants for damages. This telegram was not a necessary step in pursuing any sort of remedy.

Plaintiff never made any legal election of a remedy until it filed a declaration in this case. And manifestly the telegram did not create any sort of an estoppel.

Other assignments do not, in our judgment, merit any especial notice.

The judgment is affirmed.