FILED
COURT OF APPEALS
DIVISION II

2014 MAR 25 AM 8: 52

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GEORGE WOODS, | No. 43824-1-II |
| Respondent, | |
| v. | |
| JOHNNY HILL and MELINDA HILL, husband and wife, | UNPUBLISHED OPINION |
| Appellants. | |

WORSWICK, C.J. — Johnny Hill and Malinda Hill appeal the trial court's judgment ordering the Hills to pay George Woods damages, after Woods sued the Hills for breach of a contract for the purchase and sale of a FedEx van and FedEx delivery route. The Hills raised the affirmative defenses of impossibility, interference with performance, fraud, unclean hands, and failure to mitigate damages. The Hills also alleged counterclaims of negligent misrepresentation, intentional misrepresentation, and fraudulent inducement. The Hills now argue that the trial court erred in (1) refusing to exclude Woods's witnesses and exhibits, (2) insufficiently addressing the Hills' affirmative defenses and counterclaims in its findings of fact and conclusions of law, (3) ruling the contract completely integrated, (4) ruling that Woods's failure to provide the Hills with legal title to the van constituted neither an interference with the Hills' performance nor a failure to mitigate damages, and (5) ruling that the Hills failed to prove with clear and convincing evidence that Woods committed fraud. We find no error and affirm.

## FACTS

George Woods owned both a 1998 model FedEx van and the rights to deliver packages along a Bainbridge Island FedEx route as an independent contractor. On July 1, 2006, Woods contracted to sell both his van and his FedEx route to Johnny Hill and Malinda Hill for $85,000.[1]

The van's odometer reading was 470,192 miles at the time of the sale in 2006. From 2003 until 2006, Woods used the van to deliver packages to his route on Bainbridge Island. Prior to the sale, Woods had spent thousands of dollars repairing the van. The van had suffered an accident in 2004, which caused a dent on the bumper. One of the van's mechanics provided Woods with an invoice that stated, "[The van] has reached or exceeded design intent." Ex. 20 at 6.

Prior to the July 1, 2006 sale, Woods told Johnny[2] that the van was in "good" condition. Woods based this statement entirely upon the fact that FedEx had conducted its annual inspection of the van the month before, June 2006, and cleared it for sale.[3] Woods did not inform Johnny that Woods had conducted thousands of dollars in repairs, that the van had suffered an accident in 2004, or that a mechanic had informed him that the van had "reached or exceeded design intent." Verbatim Report of Proceedings (VRP) at 145-47. However, Woods had told Johnny that the van was 8 years old, with 470,192 miles on it.

---

[1] The Hills worked for years at FedEx as package handlers, but their pre-contract employment did not include driving vans to deliver packages.

[2] Because Johnny and Malinda Hill share the same last name, we refer to them where necessary by their first names, intending no disrespect.

[3] The FedEx inspections covered visual inspections and a Department of Transportation inspection—which included an inspection of the tires, emergency brake, horn, service lights, and lights—but did not involve inspecting the engine or undercarriage.

Johnny wanted to look at the van's maintenance records prior to the sale. Woods told Johnny that FedEx had a copy of every maintenance record regarding the van, and that Johnny should get the records from FedEx. Johnny tried but failed to acquire the records from FedEx, because FedEx refused to give records to non-owners. Woods testified that he would have accompanied the Hills to FedEx to view the records. The Hills signed the contract without gaining access to these records, without conducting their own inspection, without asking Woods if they could do an inspection, and without conducting any independent investigation.

The Hills engaged in "ride-alongs" with Woods, while Woods delivered packages along the route. The Hills testified that during the ride-alongs with Woods, Woods made the route look simple to drive, took Johnny only on Bainbridge Island's primary roads, made it look like the route was mostly business addresses, intentionally avoided going to all the delivery areas on the island, and left behind packages at the FedEx terminal to make his route faster. Johnny testified that Woods made him think that the Bainbridge Island route was small and easy to drive. Contrarily, Woods testified that he never left behind packages unless his managers instructed him to do so, and that the route's delivery addresses changed naturally over the seasons.

A. *The Contract*

The contract stated that the Hills took the van "as is." The contract further stated that "[Woods] further believes [the van] is in good condition and [the van] has had a [Department of Transportation] inspection within the last 30 days and [the Hills have] been provided with a copy of said inspection." Ex. 12 at 3. The contract explicitly waived Woods's liability for any claims

3

arising out of the ride-alongs the parties did together. The contract contained a boilerplate integration clause.[4]

The contract provided that the Hills would pay $85,000 for the van and route. The contract required the Hills to pay principal and interest over five years; payment terms were to be more specifically described "in a Promissory Note to be executed by [the Hills]."[5] Ex. 12 at 2-3. Woods testified that the contract did not contain certain payment details that they had discussed regarding the possibility of the Hills paying the contract price through a military allotment.

The contract contained a series of missing text between pages. Woods testified that he had no knowledge of the contract's missing text prior to trial, and that the text was missing in the final contract. No evidence in the record contradicts this testimony.[6]

Woods never transferred the van's legal title to the Hills. Woods testified that he and the Hills had agreed that Woods would keep the van's title. Johnny testified that Woods promised prior to the sale that he would give Johnny title, but later told Johnny that he wanted to keep the title. Johnny testified that he "didn't quite understand [the refusal to give legal title] but that was the agreement—that's what [Woods] had come to as his agreement for the route." VRP at 108.

The Hills asked Woods for the title multiple times after the sale, because they wanted to sell the van. Woods refused to relinquish the title until the contract was paid in full.

---

[4] The contract's boilerplate integration clause, Ex. 12 at 6, states as follows:

> 13. **Entire Agreement.** This instrument embodies the entire agreement between the parties hereto with respect to the transactions contemplated herein and there have been and are no agreements, representations or warranties between the parties other than those set forth or provided for herein.

[5] No subsequent promissory note by the Hills is in the record.

[6] The record does not contain the substance of the missing text.

B.    *The Hills' Problems with the Van and Route*

The Hills had many mechanical problems with the van. The Hills testified that they had to spend over $80,000 in various expenses including towing, renting replacement vans, and eventually purchasing a replacement van.

The Hills also had problems with the route, including having to service residential addresses and drive unpaved roads and hills. It took Malinda 12 hours per day to deliver all of the packages, which was much longer than the 8 hours she experienced when she rode along with Woods.

In July of 2010—after Woods's last refusal to provide title to the van—the Hills stopped making payments on the contract. Woods sued the Hills for breach of contract in May of 2011, on grounds that the Hills refused to make their last twelve payments. The Hills responded with affirmative defenses of (1) impossibility, (2) interference with performance, (3) fraud, (4) unclean hands, and (5) failure to mitigate damages. The Hills also alleged counterclaims of (1) negligent misrepresentation, (2) intentional misrepresentation, and (3) fraudulent inducement.

C.    *Discovery Dispute*

Woods did not provide the Hills with a list of his witnesses and exhibits until 10 days before trial, in violation of the case schedule. The Hills moved the trial court to exclude all of Woods's witnesses and exhibits under Pierce County Local Rule (PCLR) 16(b).[7]

---

[7] PCLR 16(b)(2) requires each party to timely provide a list of witnesses and exhibits for use at trial, pursuant to the deadline that the trial court establishes in the case schedule. "Any witness or exhibit not listed shall not be used at trial, unless the court orders otherwise for good cause and subject to such conditions as justice requires."

At a pretrial hearing, the Hills argued for exclusion of Woods's witnesses and exhibits, claiming that Woods's willful violation of PCLR 16(b) prejudiced them. However, the Hills admitted that they had no need to depose any of the late-disclosed witnesses.

Woods argued that he was preoccupied by other financial concerns, including the loss of his home, and that because he had moved to Michigan, he struggled to communicate with his attorney. Woods also argued that all of the witnesses and exhibits that Woods listed in his untimely official list were also listed in his responses to the Hills' request for discovery.

After considering both parties' arguments, the trial court ruled that Woods's violation of PCLR 16(b) "borderline[d] on willful." VRP (May 25, 2012) at 19-20. However, the trial court imposed a lesser sanction of $1,000 rather than excluding Woods's witnesses and exhibits.

D.    *Trial Court's Ruling*

After a bench trial, the trial court ruled in favor of Woods on all claims. The Hills asked the trial court to include findings and conclusions in its order that addressed their affirmative defenses and counterclaims. The trial court refused, ruling that it had no obligation to go beyond what was necessary to support the trial court's judgment, and that the transcript could explain the findings and conclusions if necessary.

The trial court made findings of fact, including:

c)    The [Hills] did breach the contract by not paying the last twelve (12) payments and still [have] a duty to do so.[8]

g)    The [Hills] made all their payments but twelve (12) payments. They owe a total of nineteen thousand two hundred and forty-eight dollars and no/100 ($19,248.00) in back payments.

---

[8] The trial court listed this finding in its conclusions of law, rather than its findings of fact.

    i)   [Woods] advised the [Hills] that [the van] was in good condition at the time of transfer. [Woods] is not a mechanic, and that was good condition based on the age and amount of usage.

    j)   [Woods] represented that there had been an inspection done by the FedEx company which did take place.

Clerk's Papers (CP) at 271-72. Based upon these findings, the trial court concluded that:

    b)   An enforceable contract was entered into and no fraud or breach of that contract took place on the part of [Woods].

    d)   The contract is clear in that the asset was purchased as is on the date of transfer with no warranties.

    f)   It is the parties' intent, from the contract language, that [parol] evidence is outside of the contract as paragraph 13 makes said contract an integrated agreement.

    g)   The [parol] evidence rule requires us to not use[] extrinsic evidence to modify an integrated contract.

    h   The Court finds that not all nine (9) elements of fraud exist at a level of clear, [cogent], and convincing [evidence] with regards to [Woods's] misrepresentations as there *is no finding of false representations* and no justifiable reliance in this matter.

    i)   The [Hills] had the duty to investigate and not sign a contract on blind faith. Therefore, there is no fraud.

    l)   There was no duty on the part of [Woods] to accept the offer to release the security interest in the vehicle and no basis to modify the contract, until the contract was paid in full.

    m)   The Court cannot order [Woods] to take back the [van] or to sign over the title.

CP at 272-73 (emphasis added). The trial court elaborated on these sparse findings and conclusions in an oral ruling.

Finally, the trial court also awarded Woods $4,000 in reasonable attorney fees based on a contract provision. The Hills appeal, seeking reversal of the judgment as well as remand for more complete findings and conclusions.

ANALYSIS

I. THE HILLS' MOTION TO EXCLUDE WOODS'S WITNESSES AND EXHIBITS

The Hills argue that the trial court erred in denying their motion to exclude Woods's witnesses and exhibits. We disagree.

The trial court has broad discretion when deciding what sanctions to place upon the violation of a local rule governing case scheduling. *Allied Fin. Servs., Inc. v. Mangum*, 72 Wn. App. 164, 168-69 n.4, 864 P.2d 1, 871 P.2d 1075 (1993). We will not overturn a trial court's decision to sanction a party for violating a local case scheduling rule absent an abuse of discretion. *Allied*, 72 Wn. App. at 168-69. A trial court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494-95, 933 P.2d 1036 (1997) (quoting *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976)). However, the trial court may impose only the least severe sanction adequate to serve its purpose. *Teter v. Deck*, 174 Wn.2d 207, 216, 274 P.3d 336 (2012).

PCLR 16(b)(2) gives the trial court discretion in fashioning a sanction other than exclusion of witnesses and exhibits "for good cause and subject to such conditions as justice requires." In this case, Woods made a showing of good cause, and the Hills admitted that only "a slight difference" existed between the witnesses and exhibits listed in Woods's untimely lists and the witnesses and exhibits listed in Woods's discovery responses. Thus, we hold that the trial court did not abuse its discretion when it denied the Hills' motion to exclude Wood's witnesses and exhibits.

II. SUFFICIENCY OF THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Hills urge us to remand this case to the trial court for additional findings and conclusions, arguing that the trial court failed to provide sufficient findings and conclusions when it refused the Hills' request to more completely address the Hills' affirmative defenses and counterclaims.[9] We disagree.

CR 52 requires the trial court in a bench trial to "find the facts specially and state separately its conclusions of law." A trial court's findings must be sufficiently specific to allow us to engage in meaningful review. *Bennett v. Smith Bundy Berman Britton, PS*, 176 Wn.2d 303, 314, 291 P.3d 886 (2013). To be sufficient, the findings and conclusions should allow us to determine what material issues the trial court decided, and its decision-making process. *City of Tacoma v. Fiberchem, Inc.*, 44 Wn. App. 538, 541, 722 P.2d 1357 (1986) (citing *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 707, 592 P.2d 631 (1979)). However, the trial court need not make negative, alternative, or cumulative findings. *Daughtry*, 91 Wn.2d at 707; *Lian v. Stalick*, 106 Wn. App. 811, 821, 25 P.3d 467 (2001).

A.    *Affirmative Defenses*

The Hills argue that the trial court erred by failing to resolve the Hills' affirmative defenses of impossibility, interference with performance, fraud, unclean hands, and failure to mitigate damages. We disagree.

We interpret a trial court's failure to make a finding of fact regarding an affirmative defense to mean that the trial court decided against that affirmative defense. *Jacobson v.*

---

[9] The Hills ask that this court remand only if the findings prevent us from fully addressing their claims on appeal.

*Lawrence*, 9 Wn. App. 786, 788, 514 P.2d 1396 (1973). Here, the trial court failed to make any factual findings regarding the Hills' affirmative defenses—such as interference with performance and mitigation of damages. We hold that the lack of factual findings constitutes the trial court's decision against the Hills' affirmative defenses. *Jacobson*, 9 Wn. App. at 788.

B.     *The Hills' Counterclaims*

The Hills argue that the trial court erred in failing to address their counterclaims for fraudulent inducement, negligent misrepresentation, and intentional misrepresentation. We disagree.

False representation and justifiable reliance are required elements of all three claims. *W. Coast, Inc. v. Snohomish County*, 112 Wn. App. 200, 206, 209-10, 48 P.3d 997 (2002). Here, the trial court concluded that

> "not all nine (9) elements of fraud exist at a level of clear, [cogent], and convincing [evidence] with regards to [Woods's] misrepresentations as there is *no finding of false representations* and no justifiable reliance in this matter."

CP at 273 (emphasis added).

This conclusion addresses all three of the Hills' counterclaims by addressing false representation and justifiable reliance, which are required elements of all three claims. *See West Coast, Inc.*, 112 Wn. App. at 206, 209-10. Thus we hold that the trial court's findings and conclusions are sufficient for us to review the Hills' claims.

### III. CONTRACT CLAIMS

The Hills argue that the trial court erred in ruling in favor of Woods on their contract claims. We disagree.

In reviewing a trial court's decision after a bench trial, we determine whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law and the judgment. *SAC Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 202, 867 P.2d 605 (1994). The party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence. *Fisher Props. Inc. v. Arden-Mayfair Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990). Substantial evidence is a "quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true." *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

Where the trial court erroneously labels a finding of fact as a conclusion of law, we review it as a finding of fact. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014). Where the trial court erroneously labels a conclusion of law as a finding of fact, we review it as a conclusion of law. *Scott's Excavating Vancouver, LLC*, 176 Wn. App. at 342.

We view all evidence and inferences in the light most favorable to the prevailing party. *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006). We defer to the trial court's determinations on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *Scott's Excavating Vancouver, LLC*, 176 Wn. App. at 342 (citing *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001)). When the trial court's findings are susceptible of two constructions, one that supports the conclusions of law and one that does not,

we construe the findings in the manner that supports the trial court's conclusions of law. *Lincoln Shiloh Assoc., Ltd. v. Mukilteo Water Dist.*, 45 Wn. App. 123, 131, 724 P.2d 1083 (1986).

A.   *Contract Integration*

The Hills argue that the trial court erred in finding that the contract with Woods was a complete integration of the parties' agreement. We disagree.

The trial court's conclusion of law "f," that the contract was integrated, is actually a finding of fact subject to substantial evidence review. *Emrich v. Connell*, 105 Wn.2d 551, 556-57, 716 P.2d 863 (1986); *see also S. Kitsap Family Worship Ctr. v. Weir*, 135 Wn. App. 900, 907, 910, 146 P.3d 935 (2006). Thus, we review the contract's integration for substantial evidence as a finding of fact. *Scott's Excavating Vancouver, LLC*, 176 Wn. App. at 341-42.

A written contract is completely integrated if the parties intended it to constitute a final expression of their agreement's terms. *Berg v. Hudesman*, 115 Wn.2d 657, 670, 801 P.2d 222 (1990). "The parol evidence rule precludes the use of extrinsic evidence to add to, subtract from, modify, or contradict the terms of a fully integrated written contract." *Brogan & Anensen LLC v. Lamphiear*, 165 Wn.2d 773, 775, 202 P.3d 960 (2009). We must consider all relevant oral and written extrinsic evidence, and determine whether the writing has incorporated the entire agreement. *Lopez v. Reynoso*, 129 Wn. App. 165, 171, 118 P.3d 398 (2005). However, mistakes in grammar, spelling, or punctuation do not change our interpretation of the parties' intent. *Sackman Orchards v. Mountain View Orchards*, 56 Wn. App. 705, 707, 784 P.2d 1308 (1990) (citing *Schauerman v. Haag*, 68 Wn.2d 868, 873, 416 P.2d 88 (1966)).

Boilerplate integration clauses provide strong evidence of integration. *King v. Rice*, 146 Wn. App. 662, 670 n.17, 191 P.3d 946 (2008); *See also S.D. Deacon Corp. of Washington v.*

12

*Gaston Bros. Excavating, Inc.*, 150 Wn. App. 87, 94, 206 P.3d 689 (2009). But an agreement may be only partially integrated—notwithstanding an integration clause—if the clause is false boilerplate, such that enforcement would amount to an endorsement of fraud. *Denny's Rests., Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 203, 859 P.2d 619 (1993); *S. Kitsap Family Worship Ctr.*, 135 Wn. App. at 907. To determine whether a contract is false boilerplate, we consider "whether [a] prior agreement was the inducing and moving cause of the final contract, whether a prior agreement formed part of the consideration for the final contract, and whether the final contract was executed on the faith of [a] prior agreement." *S. Kitsap Family Worship Ctr.*, 135 Wn. App. at 907.

In this case, the trial court based its finding of fact that the contract was integrated on the contract's integration clause. Integration clauses provide strong evidence of integration. *King*, 146 Wn. App. at 670 n.17; *see also S.D. Deacon Corp. of Wash.*, 150 Wn. App. at 94. To the extent that any other evidence conflicts with this strong evidence, we defer to the trial court's determination that the integration clause was more persuasive. *Scott's Excavating Vancouver, LLC*, 176 Wn. App. at 341-42.

Woods testified that the contract did not contain certain payment details that they had discussed—regarding the possibility of the Hills paying the contract price by Johnny setting up a military allotment. But this demonstrates only that the parties were discussing the possibility of a future agreement adding to the written contract, not that they had made a prior agreement affecting the written contract. These possible future agreements do not affect the contract's integration as a prior agreement would. *See S. Kitsap Family Worship Ctr.*, 135 Wn. App. at 907. Thus substantial evidence supports that the contract was a complete integration, with an

13

agreement to agree later as to the payment details, rather than a prior agreement that was critical to the formation of the final contract.

The contract had numerous typographical errors, including missing text between pages. However, Woods testified that the contract's missing text was missing in the contract that the parties signed, and no evidence contradicted that testimony. This provides substantial evidence that the missing pieces of the contract were not part of the parties' actual agreement. We hold that substantial evidence supports the trial court's finding that the contract was a complete integration.

B.    *Interference with Performance and Mitigation of Damages*

The Hills next argue that the trial court erred in concluding that Woods had no duty to deliver the van's legal title to the Hills. The Hills argue that Woods's failure to provide legal title constituted an interference with the Hills' performance (of paying the contract price). The Hills also argue that Woods's failure to provide legal title constituted a failure to mitigate damages, because the Hills could have continued paying the contract price if Woods had provided the Hills with legal title. We disagree.

Every contract contains an implied covenant of good faith and fair dealing, including a duty to not interfere with the other party's performance. *State v. Trask*, 91 Wn. App. 253, 272-73, 957 P.2d 781 (1998). A contract party's interference with the other party's performance discharges the other party's duty. *Jones Assocs., Inc. v. Eastside Props., Inc.*, 41 Wn. App. 462, 471, 704 P.2d 681 (1985).

However, the implied duty to not interfere with performance does not impose a "duty to affirmatively assist in the other party's performance." *Trask*, 91 Wn. App. at 272-73.

14

Furthermore, the duty does not require the party to materially alter their agreement's terms or to add additional terms to the agreement. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). Rather, the duty to not interfere with performance arises only in connection with obligations imposed by the parties' contract. *Badgett*, 116 Wn.2d at 569.

Additionally, a party injured by another party's breach of contract has a duty to prevent future harm by mitigating damages. *Smith v. King*, 106 Wn.2d 443, 450-51, 722 P.2d 796 (1986). The duty to mitigate "prevents recovery for those damages the injured party could have avoided by reasonable efforts taken after the wrong was committed." *Bernsen v. Big Bend Elec. Coop., Inc.*, 68 Wn. App. 427, 433, 842 P.2d 1047 (1993). However, a duty to mitigate damages does not require a party to modify the contract. *See Waldrip v. Hill*, 70 Wash. 187, 190-91, 126 P. 409 (1912).

Mitigation of damages and interference with performance are affirmative defenses, and thus the party raising that defense has the burden of proof. *Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 416, 433-34, 48, 886 P.2d 172 (1994); *see Jones Assocs., Inc.*, 41 Wn. App. at 471-72. The trial court in this case failed to make a finding regarding these affirmative defenses, and we consider this omission as a decision against those defenses. *Jacobson*, 9 Wn. App. at 788.

Here, Woods testified that he and the Hills agreed, prior to signing the contract, that Woods would not give the Hills legal title. The Hills do not contradict this testimony; Johnny admitted that Woods told him that Woods wanted to keep the title to the van prior to the date the parties signed the contract.

We hold that the trial court correctly concluded that delivery of legal title was not part of the parties' agreement, and that thus Woods had no duty to provide legal title. These conclusions preclude the Hills' affirmative defenses of interference with performance and mitigation of damages as a matter of law, because both doctrines' duties are limited to the contract's requirements. Thus, Woods did not interfere with the Hills' performance or fail to mitigate his damages by not providing the Hills with the van's legal title. *See Badgett*, 116 Wn.2d at 569; *Waldrip*, 70 Wash. at 190-91.

C.   *Fraud*

The Hills argue that the trial court erred when it concluded that the Hills failed to prove with clear and convincing evidence that Woods had committed fraud. We disagree.

A party claiming fraud must prove nine elements with clear and convincing evidence, which is the equivalent of saying that the ultimate fact in issue must be shown to be "highly probable." *Douglas Nw. Inc. v. Bill O'Brien & Sons Constr. Inc.*, 64 Wn. App. 661, 678, 828 P.2d 565 (1992). We review the trial court's findings of fact on the elements of fraud for substantial evidence in light of this "highly probable" test. *Douglas Nw. Inc.*, 64 Wn. App. at 678.

Fraud's nine elements are: (1) representation of an existing fact, (2) materiality, (3) falsity, (4) speaker's knowledge of its falsity, (5) speaker's intention that it shall be acted upon by the other party, (6) the other party's ignorance of falsity, (7) the other party's reliance, (8) the other party's right to rely, and (9) the other party's damages. *Hoffer v. State*, 110 Wn.2d 415, 425, 755 P.2d 781 (1988); *Douglas Nw.*, 64 Wn. App. at 678. We hold that the conclusion of law that the Hills failed to prove fraud with clear and convincing evidence was supported by the

finding of fact that there was "no finding of false representations . . . in this matter," and that sufficient evidence supported that finding. CP at 273.

### 1. *Conclusion of Law: The Hills Failed To Establish Fraud*

The trial court's conclusion of law that the Hills could not establish fraud's nine elements with clear and convincing evidence is supported by its finding of fact that there was *"no finding of false representations . . . in this matter."* We interpret this finding of fact to constitute a finding of fact that Woods did not make false representations with regard to the contract. *See Lincoln Shiloh Assocs., Ltd.*, 45 Wn. App. at 131.

### 2. *Finding of Fact: Woods Made No False Representations with Regard to the Contract*

The trial court's finding of fact that Woods did not make false representations with regard to the contract is supported by substantial evidence. This is true regarding both the van and the route.

Regarding the van, the only statement that the Hills allege Woods made was that the van was in "good" condition. Substantial evidence supports that this statement was true for three reasons.

First, the van's disclosed mileage of 470,192 supported the truth of Woods's statement. This is because "good" is a relative term, and for a van of 470,192 miles, the fact that it operated at all could be construed as "good" condition. Second, the trial court found that FedEx had inspected the van prior to Woods selling it to the Hills.[10] Third, Woods testified at trial that he did not make any false statement in forming the contract to sell the van. This is substantial

---

[10] The testimony conflicted on whether the FedEx inspection had occurred. The trial court found that it did occur, resolving this conflict in favor of Woods.

evidence that Woods's statement that the van was in "good" condition was true, given the clear and convincing evidence standard against the Hills. *See Douglas Nw.*, 64 Wn. App. at 678.

Substantial evidence also supports that Woods did not make false statements regarding the route. Woods testified that he did not leave packages behind on his ride-alongs unless his managers instructed him to do so, that the route's delivery addresses changed naturally over the seasons, and that he never made false statements to the Hills. The Hills dispute this testimony, but the trial court resolved this dispute in favor of Woods, and we defer to the trial court's credibility determination. *Scott's Excavating Vancouver, LLC*, 176 Wn. App. at 342. The trial court's conclusion of law that the Hills failed to prove fraud with clear and convincing evidence is supported by the finding of fact that Woods made no false statements in regard to the contract, and that finding of fact is in turn supported by substantial evidence. Thus, we hold that the trial court did not err in dismissing their counterclaim.

In summary, we hold that the trial court did not abuse its discretion in refusing to exclude Woods's witnesses and exhibits, and provided sufficient findings and conclusions for this court to engage in meaningful review. We hold that the parties' contract was a complete integration, Woods did not interfere with the Hills' performance, and Woods had no duty to mitigate the Hills' damages. Finally, we hold that the Hills failed to prove fraud with clear and convincing evidence. We affirm.

## ATTORNEY FEES

Both the Hills and Woods request attorney fees on appeal. A contract, statute, or equitable grounds must authorize an attorney fee award. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 271, 138 P.3d 943 (2006). When a contract provides that attorney fees and costs

No. 43824-1-II

shall be awarded to one of the parties, former RCW 4.84.330 (1977) states that "the prevailing party . . . shall be entitled to reasonable [attorney] fees in addition to costs and necessary disbursements."

In this case, the contract states that the prevailing party "shall be entitled to its reasonable costs, disbursements and [] attorney fees . . . together with all expenses which it may reasonably incur." Ex. 12 at 6. Thus we award fees and costs to the prevailing party, which in this case is Woods.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Penoyar, J.P.T.