St. Louis-San Francisco Railway Company *v.* A. B. Jones Company.

Opinion delivered March 31, 1924.

1. CARRIERS—EVIDENCE OF MARKET PRICE.—In an action against a carrier for loss from depreciation in the market price of sugar caused by delay in transportation, admission of evidence of the market price at a city near the destination was not error where

the evidence showed that the market price at such city controlled the market price at the destination.

2.  CARRIERS—DELAY IN TRANSPORTATION—DAMAGES.—Where a railway car was loaded with sugar of an inferior grade and bill of lading was issued therefor, and, with the carrier's consent, the sugar was removed and a better grade substituted, without altering the bill of lading, the carrier is liable for depreciation in the price of the better grade, caused by delay in transportation.

3.  APPEAL AND ERROR—INSTRUCTION—SPECIFIC OBJECTION.—Where, in an action for damages by depreciation of sugar by reason of defendant carrier's delay in transportation, the court, in stating the measure of damages, treated the price for which the plaintiff sold the sugar as the market price on the day of its delivery, objection to the instruction should have been specific.

4.  APPEAL AND ERROR—INSTRUCTION AS TO MEASURE OF DAMAGES.—In an action for depreciation in value of sugar by reason of defendant carrier's delay in transporting it, the court's instruction that the measure of damages was the difference between the price the plaintiff sold the sugar for and the market price on the day it should have been delivered was not prejudicial, in the absence of a showing that plaintiff sold the sugar for less than the market price at the time of delivery.

Appeal from Craighead Circuit Court, Jonesboro District; *W. W. Bandy,* Judge; affirmed.

*W. F. Evans, W. J. Orr* and *E. L. Westbrooke,* for appellant.

*Hawthorne, Hawthorne & Wheatley,* for appellee.

If there was any error in instructing the jury as to the damages in transporting the substituted sugar, it was invited by appellant, and it cannot now complain. 132 Ark. 450; 139 Ark. 90; 141 Ark. 280; 142 Ark. 223; 143 Ark. 376; 150 Ark. 371. Objections not raised in the trial court will not be considered on appeal. 150 Ark. 12; 150 Ark. 258; 137 Ark. 495; 132 Ark. 511; 134 Ark. 136; 133 Ark. 206; 136 Ark. 272; 143 Ark. 376; 144 Ark. 227; 148 Ark. 456; 139 Ark. 143; 147 Ark. 292; 142 Ark. 159. The court will not reverse for harmless error, or where the undisputed proof shows the verdict is proper. 99 Ark. 226; 148 Ark. 654; 228 S. W. 388; 135 Ark. 602; 137 Ark. 387; 145 Ark. 111; 150 Ark. 307; 131 Ark. 547; 135 Ark. 440; 141 Ark. 310; 60 L. ed. 511. The evidence must be viewed in the light most favorable to the appel-

lee.  143 Ark. 122; 142 Ark. 159; 147 Ark. 206. And the verdict must be upheld if supported by any legal evidence. 136 Ark. 84; 141 Ark. 88; 142 Ark. 159; 134 Ark. 300; 228 S. W. 388.

SMITH, J. Appellee is a corporation operating wholesale grocery stores, with its principal place of business at Jonesboro, and branch stores at Mammoth Spring and other places in Eastern Arkansas. On August 6, 1920, it bought a carload of sugar from the Milligan Grocery Company, of Springfield, Missouri, which was billed out to shipper's order on that day, to be shipped to the store at Mammoth Spring. The bill of lading was attached to a draft and sent to the Bank of Jonesboro at Jonesboro, and this draft was presented to appellee and was paid by it on August 9, the car of sugar consisting of 400 bags weighing 100 pounds each.

After loading the car of sugar the consignor discovered that an inferior grade of sugar had been loaded into the car, and the railroad company was notified of that fact, and, without taking up the bill of lading, the railroad company permitted the consignor to unload the car and to load into the car sugar of the grade which appellee had ordered. The reloading of the car was completed on the morning of the 7th, and, while it is not definitely shown that the car was turned back to the railroad at that time, we think the jury might fairly have drawn that inference from the testimony.

There was never but one bill of lading, and the car moved under it, and was delivered to appellee at Mammoth Spring upon presentation of this bill of lading, it being the one which the shipper had attached to the draft.

The testimony does not show when the car left Springfield, but the testimony does show that it was not delivered at Mammoth Spring until August 18. The testimony also shows that the schedule time of a freight train from Springfield to Mammoth Spring is about 9½ hours.

This sugar was bought just before the break in the market price of that commodity, but the price began to decline about the time of its purchase, and declined so rapidly thereafter that the market price had gone off after the car was loaded as much as four cents a pound by the time the car was delivered.

Suit was brought to recover the loss thus sustained on account of the delay in the shipment, and the jury fixed the loss at three cents per pound, and judgment was rendered accordingly, and this appeal is prosecuted to reverse that judgment.

Objection was offered to testimony showing the market price of sugar at Jonesboro, the ground of the objection being that the market price at Mammoth Spring, the place of delivery, was controlling on that issue. This is true, but no error was committed in admitting this testimony, because it was shown that the market price at Mammoth Spring was controlled by the price at Jonesboro. *Arkansas Short Leaf Lbr. Co.* v. *McInturff,* 134 Ark. 284; *Westbrook Grain & Milling Co.* v. *Johnson,* 134 Ark. 300; *Batte Bros.* v. *Battle,* 139 Ark. 302, 307; *Moore* v. *Ziba Bennett & Co.,* 147 Ark. 217, 228.

Appellant asked an instruction, numbered 2, to the effect that a verdict should be directed in its favor because there was no evidence showing when the car, as reloaded, was turned back to the company for shipment. It also asked instructions numbered 3, 4 and 5 to the effect that, if the bill of lading was issued for sugar of a different grade from that purchased, there could be no recovery on the bill of lading issued.

Instruction numbered 2 was properly refused because, as we have said, the jury might have drawn the inference from the testimony that the car was turned back to the shipper for the purpose only of correcting the mistake of loading the wrong sugar, and that the car was subject to the railroad's control as soon as this was done, and could have been moved as soon as the reloading was completed, which the testimony shows was done by noon of August 7.

Appellant insists that the other instructions should have been given on the authority of the Federal Bills of Lading Act, which went into effect January 1, 1917.

It may be conceded that, as this was an interstate shipment, this act of Congress would govern, in so far as its provisions are applicable to the points in issue, and it is the insistence of the railroad company that, under the provisions of this act, the company, if liable at all, is liable for the value of the sugar first loaded into the car as for a conversion of it by reason of its failure to deliver that sugar to the consignee, and is not liable for any depreciation in the value of the sugar delivered, because it was not covered by the bill of lading which it issued.

We think this is the real question in the case, but, under our view, no question is presented which requires a construction of the Federal statute to arrive at the proper answer thereto.

The bill of lading covered 400 bags of sugar, weighing 40,400 pounds, loaded in car P. & R. 2961, and this car, containing that quantity of sugar, was delivered to the consignee at Mammoth Spring—the grocery company becoming the consignee upon payment of the draft, which entitled it to the possession of the bill of lading. It was no concern of the railroad company whether the sugar shipped corresponded to the sugar ordered. Its duty was to deliver, without unnecessary or unreasonable delay, the sugar covered by the bill of lading. It is true the sugar first loaded was not shipped, but the consignor substituted other sugar for this, to be shipped in lieu thereof, the same quantity, in the same car, and on the same bill of lading. The railroad company did not ask the surrender of the old bill of lading and the consignor did not request the issuance of a new one. By consent, both parties treated the sugar shipped as the sugar covered by the bill of lading, and the consignee accepted it as such. The sugar delivered was the sugar ordered, but, as we have said, it was no concern of the railroad company whether the sugar met the specifications of the order or not.

The bill of lading issued covered the car of sugar tendered for shipment, and this was the substituted car of sugar, and it covered only that car. It was not contended that any fraud or imposition was practiced on the railroad company, or that its freight rates or its duty as a carrier would have been altered or affected if the substitution had not been made. The bill of lading did not specify the grade of the sugar, and the description employed in the bill of lading was simply "400 bags sugar, double sacks, 40,400 pounds." That number of sacks, totaling that weight, were replaced in the same car, to be shipped to the same consignee, under the bill of lading already issued, and this with the full knowledge of the railroad's agent who issued the bill of lading. The railroad company cannot therefore excuse its delay in delivering this car by showing that the consignor had substituted one car of sugar for another.

If we are correct in this, it follows that appellant is in error in insisting that the suit should have been brought for the value of the sugar first loaded into the car, and should not have sued for depreciation in the value of the sugar which was in fact shipped.

The instruction given by the court substantially conformed to the law as we have declared it, and we need not discuss the specific objections made to these instructions, as they raise the points here decided adversely to appellant's contention.

After the court gave its general charge, the attorney for the railroad company made specific objections, raising the questions which we have just considered, after which the court gave the following additional instruction: " * * * If you find from the proof that a different kind of sugar was substituted for the sugar first loaded for shipment, and that this reloading was completed on August 7, and that, after it was reloaded, it was tendered to and accepted for shipment to Mammoth Spring by the defendant railroad company, and that the freight charges were paid for its transportation, and if you further find that the delay in the transportation was an unnecessary

delay, and that, by reason of this unnecessary delay in the shipment, plaintiff, as a direct result thereof, sustained loss, then your verdict should be for the plaintiff. The burden of proof, gentlemen, is on the plaintiff to show that this substituted sugar was presented to the railroad company for shipment, and that it was accepted by the railroad company for shipment and the freight paid for its transportation."

An exception was duly saved to the giving of this instruction, and it is now insisted that this instruction accentuated the error of the general ·charge. But we think the instruction was a correct declaration of the law.

It also insisted that an erroneous instruction was given on the measure of damages. On this subject the court charged the jury as follows: "If you find for the plaintiff, the measure of damages will be the difference between the price plaintiff paid for the sugar and the market price of the sugar on the day that the sugar should have been delivered at Mammoth Spring if there had been no unnecessary delay in the transportation. The difference between the price the plaintiff sold the sugar for and what the market price of the sugar was on the day it should have been delivered at Mammoth Spring, if there had been no unnecessary delay in the transportation."

This instruction was given orally, and it appears that the judge realized that the first part of the instruction was not accurate in that it did not require the jury to find the difference in market value at Mammoth Spring, but there was an attempt to correct this error by making the price at Mammoth Spring controlling. It is true the instruction told the jury the measure of damages was the difference between the price the plaintiff sold the sugar for and what the market price of the sugar was on the day it should have been delivered if there had been no unnecessary delay in the transportation. The court evidently treated the price for which the plaintiff sold the sugar as the market price on the day of its delivery, and this was a mistake which, if thought prejudicial,

should have been reached by a specific objection. The latter part of this instruction indicates that the court was attempting to make the measure of damages the difference between the market price on the day the sugar was delivered at Mammoth Spring and the market price on the day when it would have been delivered had there been no delay in the delivery, and treated the price at which it was sold as being the market price. As we have said, there was no specific objection to this. Moreover, it does not appear to be prejudicial, because there was no showing that the plaintiff sold the sugar for less than the market price at the time of its delivery.

There appears to be no error, and the judgment is affirmed.